## STATE v. HUGH (DOPEY) FUQUA.

(Filed 19 September, 1951.)

**1. Intoxicating Liquor § 9c: Criminal Law § 35—**

     Hearsay evidence to the effect that defendant sold intoxicating liquor at his store and that he employed a certain person as his "runner" is properly considered by the jury when admitted in evidence without objection.

**2. Intoxicating Liquor § 4b—**

. A person has possession of intoxicating liquor within the purview of G.S. 18-2 when he has the power and intent to control its disposition or use, either alone or in combination with others.

**3. Intoxicating Liquor § 9d—**

Evidence to the effect that defendant's employee went from defendant's store in North Carolina across the road to a barn in Virginia and returned to the store with a cup, that immediately thereafter an officer entered the store, saw the cup on the counter, that a third person, who immediately thereafter disclaimed any interest therein, picked it up, and that the officer took possession of the cup and discovered that it was filled with intoxicating liquor diluted by Coca-Cola, *held* sufficient to sustain defendant's conviction of illegal possession of the intoxicating liquor.

**4. Intoxicating Liquor § 4a—**

It is illegal for a person to possess in a dry county any intoxicating liquor for any purpose not sanctioned by the Turlington Act of 1923 or by the provisions of the Alcoholic Beverage Control Act of 1937. G.S. 18-2, G.S. 18-11, G.S. 18-49, G.S. 18-58.

VALENTINE, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Pless, J.,* and a jury, at March Term, 1951, of CASWELL.

This is a criminal action in which the defendant was originally charged in separate counts with these offenses: (1) Possession of intoxicating liquor for the purpose of sale; and (2) illegal possession of intoxicating liquor. The crimes were allegedly committed in Caswell County, which does not operate county liquor stores under the Alcoholic Beverage Control Act of 1937.

The only testimony at the trial was that of the State's witness, Roy Fowlkes, a deputy sheriff of Caswell County, who made out this case for the prosecution:

For an appreciable period preceding 25 November, 1950, the defendant operated a small grocery store adjacent to a road at a place in Caswell County, North Carolina, just south of the dividing line between the State of North Carolina and the Commonwealth of Virginia. There was a barn in the edge of Virginia "right across the road" from the defendant's place of business. It had been repeatedly reported to law enforcement officers of Caswell County that the defendant sold intoxicating liquor at his store, and that he employed one "Big Head" Ware as a runner to go into Virginia and "bring liquor back." On the night of 25 November, 1950, the defendant, Ware, a man named Straighter, and two women were in the store. Deputy Sheriff Fowlkes, who was nearby, observed Ware carrying a cup from the store to the barn, where he temporarily vanished. After a few seconds, Fowlkes saw Ware return to the store from the barn

"with the same cup." Fowlkes forthwith entered the store. As he did so, he perceived the cup standing on a counter between the defendant and Straighter just an instant before the latter "picked it up off the counter and held it on the side." Fowlkes did not see the defendant touch the cup or "have anything to do with it." Fowlkes took the cup from Straighter, and discovered that it was filled with the intoxicating liquor diluted by Coca-Cola. Straighter immediately disclaimed any interest in the "liquor," but the defendant "didn't say whether it was his or not." Shortly thereafter Fowlkes searched the barn with "the Virginia law" and "found several pieces of pints of liquor, some bottled-in-bond and some white" there.

The jury acquitted the defendant on the count charging possession of intoxicating liquor for the purpose of sale, and convicted him on the count charging illegal possession of intoxicating liquor. Judgment was pronounced against defendant on the last mentioned count, and he appealed.

*Attorney-General McMullan, Assistant Attorney-General Moody, and Robert B. Broughton, Member of Staff, for the State.*

*P. W. Glidewell, Sr., for defendant, appellant.*

ERVIN, J. The defendant does not question the propriety of the admission of any of the evidence of the State's witness, Deputy Sheriff Fowlkes. In consequence, the testimony as to reports to law enforcement officers concerning the activities of the accused is governed by the rule which prevails in this jurisdiction that where hearsay is admitted without objection, it may be considered with the other evidence and given any evidentiary value which it may possess. *Maley v. Furniture Co.*, 214 N.C. 589, 200 S.E. 438.

The solitary assignment of error made by the defendant is that the trial judge erred in refusing to dismiss the action upon a compulsory nonsuit. G.S. 15-173.

Inasmuch as the criminal laws of North Carolina have no force beyond the borders of the State and cannot apply to any intoxicating liquor which may have been cached at the barn in the Commonwealth of Virginia, the validity of the conviction of the defendant necessarily hinges on the sufficiency of the State's testimony to establish these two propositions: (1) That the defendant possessed the intoxicating liquor contained in the cup found in his store; and (2) that the defendant's possession of such intoxicating liquor was illegal.

An accused has possession of intoxicating liquor within the meaning of the law when he has both the power and the intent to control its disposition or use. The requisite power to control may reside in the accused

acting alone or in combination with others. *S. v. Meyers,* 190 N.C. 239, 129 S.E. 600.

This being true, the testimony offered by the State at the trial justifies the inference that the defendant had possession of the intoxicating liquor in the cup; for such evidence tends to show that the defendant, acting either alone or in combination with his servant, "Big Head" Ware, had both the power and the intent to control the disposition or use of such liquor.

This brings us to the final inquiry whether the testimony is sufficient to sustain an additional inference that the defendant's possession of the intoxicating liquor in the cup was illegal.

Caswell County has not elected to operate county liquor stores under the Alcoholic Beverage Control Act of 1937. Hence, it is unlawful for any person to possess any intoxicating liquor in Caswell County in any manner or in any place or for any purpose not sanctioned by the Turlington Act of 1923, or by the provisions of the Alcoholic Beverage Control Act of 1937 applicable to counties not engaged in operating county liquor stores. *S. v. Barnhardt,* 230 N.C. 223, 52 S.E. 2d 904; *S. v. Davis,* 214 N.C. 787, 1 S.E. 2d 104.

The evidence presented by the State indicates that the defendant possessed the intoxicating liquor in the cup at his store so that it might be put to use as a beverage at that place. Possession of intoxicating liquor in such a manner and at such a place for such a purpose is not sanctioned by any relevant provision of the Turlington Act or the Alcoholic Beverage Control Act. General Statutes, sections 18-2, 18-11, 18-49, 18-58; Chapter 457 of the Session Laws of 1945. For this reason, the testimony warrants the conclusion that the defendant illegally possessed the intoxicating liquor in question.

No error.

VALENTINE, J., took no part in the consideration or decision of this case.