STATE OF NORTH CAROLINA v. ALPHONZA THORPE

No. 8814SC691

(Filed 20 June 1989)

1. **Narcotics § 4— maintaining building for possession or sale of controlled substances—sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for knowingly maintaining a building used for the possession or sale of controlled substances where it tended to show that defendant provided financing for a game room and was in what he considered a marriage to the woman who controlled the lease, the utilities, and the liquor license; defendant was on the premises or near the game room on each

occasion when undercover SBI agents visited the store; and plaintiff gave directions to people who were in the store.

**2. Narcotics § 4.4— constructive possession of narcotics— insufficiency of evidence**

Evidence was insufficient to be submitted to the jury in a prosecution for possession with intent to sell and deliver Dilaudid where there was no evidence that the drug seller was an employee or agent of defendant, no evidence that defendant ever had actual possession of the narcotics, and no evidence that defendant was present in the store at the time the sales took place.

**3. Narcotics § 4— aiding and abetting in sale of narcotics— insufficiency of evidence**

Evidence was insufficient to be submitted to the jury on the theory of aiding and abetting in a prosecution for sale and delivery of Dilaudid where defendant directed customers to a drug dealer and remained near the sale but defendant did not communicate to the dealer any willingness to assist him.

Chief Judge HEDRICK concurring in part and dissenting in part.

APPEAL by defendant from *Lee (Thomas H.), Judge.* Judgment entered 28 January 1988 in Superior Court, DURHAM County. Heard in the Court of Appeals 7 December 1988.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General James P. Erwin, Jr., for the State.*

*Loflin & Loflin, by Thomas F. Loflin, III, for defendant-appellant.*

ORR, Judge.

Defendant appeals from his convictions on two charges of possession with intent to sell or deliver the controlled substance Dilaudid, two counts of sale of the controlled substance Dilaudid, and two counts of knowingly maintaining a building used for the possession or sale of controlled substances.

The principal evidence for the State consisted of the testimony of various law enforcement agents who were involved in an undercover investigation which involved Doris' Game Room. The defendant, Alphonza Thorpe, presented no evidence.

The State's evidence tended to show that on 13 March 1986, Kay L. Broos, an agent for the State Bureau of Investigation, was working undercover in Durham, North Carolina with the assistance of the Durham Vice Squad. Ms. Broos, while in her undercover capacity, stopped her van when she observed defendant at the corner of Corporation and Roxboro roads. A man who had been standing with defendant approached the van. She asked him if he knew how she could get some D's (or Dilaudid). This man was later identified as Charles Henry Thomas. Defendant was across the street and some 30 feet away while Ms. Broos talked to Thomas.

April 9 and April 16 are the two dates cited in the indictments against defendant. On 9 April 1986, Ms. Broos went back to the aforementioned intersection where she again saw defendant. This time she was accompanied by SBI Agent Alexander and two detectives. On this occasion, defendant asked Ms. Broos what was going on. She answered that she wanted to get some "fours" (street slang for Dilaudid). There is a conflict in the testimony at this point. Ms. Broos claims defendant then stated, "Go on inside. It's my store. It's okay." Her partner in the van that day, Agent Alexander, testified that she thought defendant said to go inside *the* store.

The women then went inside the store and saw Charles Henry Thomas sitting at the bar. Ms. Broos recognized Thomas as being the same person she had dealt with previously on 13 March 1986 and approached him to purchase two "fours." Thomas stepped behind the bar and pulled out a tinfoil wrapper which contained the pills. He handed Agent Broos two pills, and she gave him $100.00. Defendant was not in the game room at the time this transaction took place.

Ms. Broos went back to the game room later that same day. This time she went inside and spoke to Thomas again. She purchased another pill from Thomas. She also asked him where the owner was. He responded that the owner was not there.

Ms. Broos and Agent Alexander returned to Doris' Game Room on 16 April 1986. They again saw defendant on the street corner. They told him they wanted to go inside and get some "fours." Defendant walked the two women to the front door of the game room. He did not go inside at this time.

A little later, defendant entered the game room and picked up a pool stick. He asked Ms. Broos if she had gotten her "fours." She replied that she had not because she was waiting for him.

He instructed her to go see Thomas who was standing in front of the counter. When Ms. Broos approached him, he went behind the counter and sold her two "fours."

After purchasing the pills, the two women left the building and spoke to defendant who was again standing outside. He asked them if they had gotten their "fours." Agent Broos responded affirmatively. She then told defendant that she was concerned about going in the store and dealing with people she did not know. Defendant then told her not to worry and that she could buy her pills directly from him.

Thorpe received a total of 16 years active sentence on all charges. He received two seven-year sentences under G.S. 90-95(a)(1) for two counts: 1) possession with intent to sell or deliver a controlled substance, and 2) sale of a controlled substance. In addition, he received a two-year sentence for knowingly maintaining a building for the purpose of unlawfully keeping or selling controlled substances under G.S. 90-108(a)(7).

I.

Defendant-appellant makes nine assignments of error in the eight questions presented. The primary issue to be considered is the assignment of error questioning whether there was sufficient evidence to take these charges to the jury.

The standard for determining the sufficiency of the evidence on a motion for nonsuit in a criminal trial is:

> upon a motion for judgment of nonsuit in a criminal action, all of the evidence favorable to the State, whether competent or incompetent, must be considered, such evidence must be deemed true and considered in the light most favorable to the State, discrepancies and contradictions therein are disregarded and the State is entitled to every inference of fact which may be reasonably deduced therefrom.

*State v. Witherspoon*, 293 N.C. 321, 326, 237 S.E. 2d 822, 826 (1977). (Citations omitted.)

[1] The misdemeanor indictment charged defendant with maintaining a building for purposes of selling controlled substances in violation of G.S. 90-108(a)(7) (1985). This statute reads in part:

(a) It shall be unlawful for any person:

.   .   .

(7) To knowingly keep or maintain any store, shop, warehouse . . . which is resorted to by persons using controlled substances in violation of this Article for the purpose of using such substances, or which is used for the keeping or selling of the same in violation of this Article. . . .

G.S. 90-108(a)(7).

There can be no doubt according to the evidence that defendant knew drugs were being sold on the premises of Doris' Game Room. Agent Broos testified:

Well, Agent Alexander and myself sat down on the bench and we were there a couple of minutes. And the defendant, Mr. Thorpe, walked in the front door and he came over towards the pool table and he picked up a pool stick. And we were sitting there and he came and took another couple of steps and looked at me and asked me if I got my fours. And it [sic] told him, no, I was waiting on him.

And he said, 'Well, go on over there,' pointing to Charles Henry Thomas who was standing there in front of the bar and he said, 'Go on over there and see him, the same one as before.'

The critical question is whether defendant had control over the premises so he could be considered to "keep or maintain" the store as required under G.S. 90-108(a)(7). The State's evidence on the control issue, viewed in the light most favorable to the State, provides sufficient evidence to avoid a nonsuit.

The State provided proof through the testimony of Avery Hall, a probation and parole officer, that while the game room was in Doris Burnette's name, Thorpe had provided the capital for the business by selling his Cadillac. The inference could also be made from the testimony that the game room was only in Ms. Burnette's name because the couple wished to obtain a beer license, and Mr. Thorpe was not eligible for a license. Ms. Hall also testified that clearance was obtained so that Thorpe would work in the game room as Doris wished to have his assistance.

We conclude that viewing the evidence in the light most favorable to the State, there was sufficient evidence to take this issue to the jury. Evidence was presented that Thorpe provided financing for the game room and was in what he considered a

marriage to the woman who controlled the lease, the utilities, and the liquor license. In addition to these facts, defendant was on the premises or near the game room on each occasion when the agents visited the store, and he gave directions to people who were in the store.

## II.

Thorpe was also charged on two felony charges in violation of G.S. 90-95(a)(1): 1) possession with intent to sell and deliver schedule II substances and 2) sale and delivery of schedule II substances. Each charge was filed for actions on 9 April 1986 and 16 April 1986. Defendant claims the evidence was not sufficient to go to the jury on either felony charge for either occasion. We agree.

## A.

[2] We begin by analyzing the possession with intent to sell narcotics charge against defendant for the events on April 9. The State concedes that there is no evidence that defendant ever had actual possession of the narcotics. The States relies on a theory of constructive possession to support its indictment. The State points to *State v. Fuqua*, 234 N.C. 168, 66 S.E. 2d 667 (1951), to support this theory. *Fuqua*, however, is readily distinguishable.

In *Fuqua*, the defendant was charged with possession of intoxicating liquor for the purpose of sale, and illegal possession of intoxicating liquor. The jury acquitted him of the first charge and convicted him of the latter. The facts presented by the State showed an employee for the defendant was seen by a police officer running across the street from the defendant's place of business into a barn. The barn was located in the State of Virginia. The officer observed the employee carrying a cup in his hand as he went to the barn and returned to the defendant's place of business. The officer entered the defendant's business and found the cup was filled with Coca-Cola and liquor. The officer never observed the defendant-owner in possession of the cup. *Id.*

Our Supreme Court held, "[a]n accused has possession of intoxicating liquor within the meaning of the law when he has both the power and the intent to control its disposition or use." *Id.* at 170, 66 S.E. 2d at 668. This power to control may include power used in conjunction with others. *Id.* at 170-71, 66 S.E. 2d at 668. In *Fuqua*, the Court held that the defendant-owner was acting

in conjunction with his employee and therefore held there was sufficient evidence to go to the jury.

The distinctions between *Fuqua* and the case at bar are obvious. First, there is no evidence in the record of the case *sub judice* that Thomas, the drug seller, was an employee or agent of defendant. Further, there is no evidence that defendant was present in the store at the time the sales took place.

The cases which the State relies on to support its constructive possession theory typically concern defendants who are found in the proximity of some narcotics which are not in the possession of any other person. *See State v. Brown*, 310 N.C. 563, 313 S.E. 2d 585 (1984); *State v. Williams*, 307 N.C. 452, 298 S.E. 2d 372 (1983).

In the case *sub judice*, defendant notes the controlled substances were in the actual possession of Thomas. We do not know if they were on his person or located somewhere in the game room because Agent Broos was unable to testify to that fact.

Also persuasive is defendant's reliance on *State v. Ledford*, 23 N.C. App. 314, 208 S.E. 2d 870 (1974). In *Ledford*, the defendant was indicted for unlawful possession of LSD. The State's evidence showed that a police officer observed the defendant at a drive-in with a boy named Tessnear. Several times Tessnear left the group and went to talk to people in other cars. Tessnear would then go behind a particular building, return to the car, and an exchange of some kind would occur. Tessnear left the drive-in with the defendant and his sister. *Id.*

After some time, the defendant and his sister returned to the drive-in with Tessnear. Defendant then went behind the same building the police officer had observed Tessnear go behind earlier. Defendant was picking up various objects. A police officer approached the defendant and asked him what he had in his pockets. Defendant cooperated at first and then he ran from the police. He was arrested several days later. Police officers found syringes and pills containing LSD behind the building. *Id.*

Defendant's motion for nonsuit was denied. On appeal, this Court held the evidence presented did not take the court "beyond the realm of suspicion and conjecture." *Id.* at 316, 208 S.E. 2d at 872.

In *Ledford*, the defendant was seen coming and going in a car with the man who made "the exchanges." Further, Ledford

STATE v. THORPE

[94 N.C. App. 270 (1989)]

was seen picking up objects behind a building where LSD was found. Perhaps most condemning is the fact Ledford fled the police when he was asked what he had in his pockets. *Id.*

We believe the case mounted against Ledford was more substantial than the facts presented against defendant in the case *sub judice.* Therefore, in accordance with the principles of *Ledford,* we hold the motion for nonsuit in the charge of possession with intent to sell and deliver for the April 9 transactions should have been granted.

The same analysis applies to the identical charge of possession with intent to sell narcotics for the April 16 transactions. The only significant difference between the April 9 transactions and the April 16 transactions is that defendant entered Doris' Game Room with Agent Broos on April 16. However, there is still no testimony that defendant was in the game room at the time the sale of Dilaudid took place.

The facts of the April 16 sale are substantially similar to those of April 9. Again we compare this situation to the facts in *Ledford.* The facts in question are still less persuasive than the facts in *Ledford.* The motion for nonsuit in the charge of possession with intent to sell and deliver for the April 16 transaction should have been granted.

B.

[3] The State relies on the theory of aiding and abetting to support its second felony charge of sale and delivery of schedule II substances. As stated above, there is no evidence that defendant was actually present in Doris' Game Room when Agent Broos purchased the illegal narcotics from Thomas on either of the dates cited in the indictment. The State again relies on the theory of constructive presence to tie defendant to the sale and delivery transactions which transpired between Thomas and the SBI agents.

The State cites *State v. Wiggins,* 16 N.C. App. 527, 192 S.E. 2d 680 (1972), and *State v. Torain,* 20 N.C. App. 69, 200 S.E. 2d 665 (1973), *cert. denied,* 284 N.C. 622, 202 S.E. 2d 278 (1974), as authority for its constructive presence theory. These cases, however, concern the constructive presence of an aider and abettor when that person is waiting in the getaway car or standing watch with a rifle while a crime is being committed. *Wiggins* holds that an

aider or abettor is constructively present if they are close enough to render assistance. *Wiggins* at 530-31, 192 S.E. 2d at 682-83.

In the case *sub judice*, the State claims defendant aided Thomas in the sale of the illegal narcotics on both April 9 and April 16. On each occasion, defendant directed the SBI agents to Thomas. Our Supreme Court has stated a person is guilty of aiding and abetting if he "by word or deed, [gives] active encouragement to the perpetrator of the crime or by his conduct [makes] it known to such perpetrator that he [is] standing by to lend assistance when and if it should become necessary." *State v. Gaines*, 260 N.C. 228, 231-32, 132 S.E. 2d 485, 487 (1963), *quoting State v. Ham*, 238 N.C. 94, 97, 76 S.E. 2d 346, 348 (1953).

The question becomes whether or not directing customers to a dealer and remaining near the sale (but not necessarily at it) is the type of "encouragement" or "assistance" our Supreme Court referred to in *Gaines*. Further, we must examine whether the offer to assist was communicated to the perpetrator by the defendant.

In *Gaines*, the two defendants accompanied the perpetrator (Hill) to a jewelry store where Hill stole a diamond ring. The two defendants claimed they thought Hill was going to the store to buy a ring. When the jeweler accused Hill of stealing a ring, Hill and the defendants fled. Our Supreme Court held there was insufficient evidence of aiding and abetting because there was no evidence that either defendant ever had possession of the ring. In addition, there was no evidence that they offered any sort of encouragement to the defendant. *Gaines*, 260 N.C. 228, 132 S.E. 2d 485 (1963).

"The mere presence of the defendant at the scene of the crime, even though he is in sympathy with the criminal act and does nothing to prevent its commission, does not make him guilty of the offense." (Citations omitted.) *State v. Sanders*, 288 N.C. 285, 290, 218 S.E. 2d 352, 357 (1975), *cert. denied, Sanders v. North Carolina*, 423 U.S. 1091 (1976). In *Sanders*, the defendant did not assist two of his co-defendants in placing dynamite under the hood of a car. However, the defendant knew what his co-defendants were doing, but he stayed in one car and held a gun to the witness's head. *Id.* at 288-89, 218 S.E. 2d at 356.

The Supreme Court held the defendant was present and available to render assistance to the perpetrators had they needed help. *Id.* at 290, 218 S.E. 2d at 357. The defendant communicated

his willingness to assist by accompanying the perpetrators to the place where he knew a crime would occur. There was sufficient evidence, therefore, to support the aiding and abetting charge against the defendant. *Id.*

In the case *sub judice*, the only evidence of encouragement by defendant was when he directed the agents to Thomas to purchase the illegal narcotics. As stated in *Gaines*, to be convicted of aiding and abetting, the willingness to assist the perpetrator must be communicated to him. *Gaines* at 231-32, 132 S.E. 2d 487. We have no evidence of such communication in the case at bar.

The trial court erred in denying defendant's motion for nonsuit in the charges of sale and delivery of schedule II substances. We have reviewed defendant's other assignments of error and find them to be without merit.

No error as to the misdemeanor conviction.

Reversed as to the felony convictions.

Judge ARNOLD concurs.

Chief Judge HEDRICK concurs in part and dissents in part.

Chief Judge HEDRICK concurring in part and dissenting in part.

I concur in the part of the opinion which finds no error in defendant's trial for the misdemeanor of knowingly maintaining a building for the purpose of unlawfully keeping or selling controlled substances. I dissent, however, from the part of the opinion reversing defendant's felony convictions. In my opinion, the evidence is sufficient to take the case to the jury and support the verdict finding defendant guilty of possession with intent to sell or deliver a controlled substance and sale of a controlled substance. I vote to find no error.