STATE OF NORTH CAROLINA v. ALPHONZA THORPE

No. 267PA89

(Filed 5 April 1990)

**Narcotics § 4.3 (NCI3d) — possession with intent to sell — felonious sale — circumstantial evidence — sufficient**

The evidence was sufficient to take charges of possession with intent to sell and deliver the controlled substance dilaudid and felonious sale of that controlled substance to the jury where there was ample evidence that defendant was the owner of the game room where both sales transactions took place; the evidence of control was bolstered by the exercise of physical custody; the inference of knowledge and possession by virtue of ownership and custody of the game room was buttressed by defendant's presence either on the premises or nearby; defendant's participation in the sale could be deduced from testimony that he had directed an undercover agent to enter his store on one occasion and to "come on inside" on another; and the inference of defendant's participation was further supported by an apparent principal-agent relationship with the man from whom the undercover agent purchased the drugs.

**Am Jur 2d, Drugs, Narcotics, and Poisons § 47.**

Justice MITCHELL dissenting.

APPEAL of right by the State pursuant to N.C.G.S. § 7A-30(2) from a decision of a divided panel of the Court of Appeals, reported at 94 N.C. App. 270, 380 S.E.2d 777 (1989), finding no error in part and reversing in part judgments of imprisonment entered by Lee, J., at the 25 January 1988 Criminal Session of Superior Court, DURHAM County. Heard in the Supreme Court 13 February 1990.

*Lacy H. Thornburg, Attorney General, by James P. Erwin, Jr., Special Deputy Attorney General, for the State-appellant.*

*Loflin & Loflin, by Thomas F. Loflin III, for defendant-appellee.*

WHICHARD, Justice.

The jury returned verdicts finding defendant guilty of two counts of knowingly maintaining a building used for keeping or

selling the controlled substance dilaudid, a misdemeanor; two charges of possession with intent to sell or deliver the controlled substance dilaudid, a felony; and two charges of the felonious sale of that controlled substance. The trial court sentenced defendant to a total of sixteen years imprisonment.

The Court of Appeals affirmed the misdemeanor convictions, but a majority held that the trial court had erred in denying defendant's motion for nonsuit on the felony charges. Chief Judge Hedrick dissented, concluding that the evidence was sufficient to take the felony charges to the jury. *State v. Thorpe*, 94 N.C. App. 270, 279, 380 S.E.2d 777, 782 (1989). The State appealed as a matter of right. N.C.G.S. § 7A-30(2) (1989).

Our assessment of the evidence implicating defendant in the felonies charged, considered as a whole and taken in the light most favorable to the State, establishes that the evidence was sufficient to take those charges to the jury. We thus reverse.

Testimony by witnesses for the State tended to show the following: On 9 April 1986, an undercover agent for the State Bureau of Investigation stopped the van she was driving in the vicinity of Doris' Game Room, a poolroom and bar at the corner of North Roxboro and Corporation Streets in Durham. Defendant was standing on the corner with a man later identified as Charles Henry Thomas. The agent had seen defendant standing on the corner with Thomas a month earlier, when she had purchased a single dilaudid tablet from Thomas from her van window. The agent rolled down her window; defendant approached, greeted her, and asked what she needed. She responded that she wanted to get some "fours," a street name for dilaudid. The agent testified that defendant then said, "Well, go on inside." When she said she could not, he reassured her, saying, "Go on inside. It's my store. It's okay." The agent and her companion entered Doris' Game Room. Thomas was sitting in front of the bar. The agent approached Thomas and reiterated her request. Thomas stepped behind the bar, took two pills from a tin foil packet, and placed them on the bar counter. The agent took the pills and handed Thomas $100. When she left the poolroom, the agent saw defendant still standing on the street corner and thanked him. He acknowledged her thanks.

That afternoon the agent returned to the game room. She saw Thomas in a chair by the bar and asked to buy what she

had bought in the morning. When she asked Thomas where the owner was, he told her nobody was there who owned the place.

On 16 April 1986, the agent returned a fourth time to the corner of North Roxboro and Corporation Streets. She and her companion saw defendant on the corner. Defendant approached the pair, greeted the agent, and asked what she wanted. The agent told defendant that they wanted to buy some "fours," but that she was uncomfortable being in the store and its neighborhood because she was white. Defendant responded, "Well, come on inside." He accompanied the two agents to the door, but did not enter. There were seven other people, including defendant's wife, in the game room at the time. Defendant subsequently entered and asked the agent if she had gotten her "fours." She responded that she had not—that she was waiting for him. Defendant motioned towards Thomas, who was standing at the bar, and told the agent to go over to him for the "fours." As she approached, Thomas went behind the bar and again pulled out a packet containing pills. He gave her two, and she paid for them.

As the agents left, they saw defendant outside on the corner once again. He came up to the agents and asked if they had gotten "it." The first agent replied that she had, but said that she was afraid of being seen around the store and of being around people she did not know. She told defendant she preferred to deal with only one person. Defendant replied that she could get the pills from him.

A federal parole officer testified that she knew Doris Burnette Thorpe, who is not legally married to defendant but considers herself his wife. The officer testified that Ms. Thorpe told her that defendant had provided the capital for the game room by selling his Cadillac. A Durham vice squad investigator testified that he was familiar with Doris' Game Room and that he had known it as long as defendant had owned it. Another federal parole officer testified that he once asked defendant why defendant was seen so frequently in front of Doris' Game Room, and defendant replied that he owned the establishment. A third parole officer testified that he had known defendant and the game room since 1982 and that he had seen defendant there alone around the pool tables and behind the bar. On one occasion when the officer attempted to enter the game room, it was locked, and defendant had unlocked the door and let the officer in.

The elements that the State must prove to establish possession of narcotics with the intent to sell or deliver are "(1) defendant's possession of the drug, and (2) defendant's intention to 'sell or deliver' the drug." *State v. Creason*, 313 N.C. 122, 129, 326 S.E.2d 24, 28 (1985). In the context of the controlled substance statutes, " '[d]eliver' . . . means the actual[,] constructive, or attempted transfer from one person to another of a controlled substance." N.C.G.S. § 90-87(7) (1985); *see State v. Creason*, 313 N.C. at 129, 326 S.E.2d at 28. When sale and delivery are part of the same transaction, they may be charged as a single offense, *State v. Dietz*, 289 N.C. 488, 498-99, 223 S.E.2d 357, 363-64 (1976), and this Court has noted that "[w]ithin the intent of the legislature, the terms are synonymous, the gist of the offense being possession with the intent to *transfer* the contraband." *State v. Creason*, 313 N.C. at 130, 326 S.E.2d at 28. Thus "sale" of a controlled substance is, like the statutory definition of "deliver," an actual, constructive, or attempted transfer of that substance, but one "for a specified price payable in money." *State v. Creason*, 313 N.C. at 129, 326 S.E.2d at 28.

Possession, like delivery, may be either actual or constructive: "An accused has possession of [contraband] . . . when he has both the power and the intent to control its disposition or use." *State v. Fuqua*, 234 N.C. 168, 170, 66 S.E.2d 667, 668 (1951). Where direct evidence of power and intent to control are absent, however, these manifestations of actual possession must be inferred from the circumstances.

> Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession. [T]he State may overcome a motion to dismiss or motion for judgment as of nonsuit by presenting evidence which places the accused 'within such close juxtaposition to the narcotic drugs as to justify the jury in concluding that the same was in his possession.'

*State v. Brown*, 310 N.C. 563, 569, 313 S.E.2d 585, 589 (1984) (quoting *State v. Harvey*, 281 N.C. 1, 12-13, 187 S.E.2d 706, 714 (1972)). *See also State v. Williams*, 307 N.C. 452, 455, 298 S.E.2d 372, 375 (1983); *State v. Allen*, 279 N.C. 406, 410, 183 S.E.2d 680, 683 (1971). Constructive possession has been found when the contraband was on the property in which the defendant had some exclusive

STATE v. THORPE

[326 N.C. 451 (1990)]

possessory interest and there was evidence of his or her presence on the property, *e.g.*, *State v. Harvey*, 281 N.C. 1, 187 S.E.2d 706 (defendant in own home near drugs); and it has been found where possession is not exclusive but defendant exercises sole or joint physical custody, *e.g.*, *State v. Brown*, 310 N.C. 563, 313 S.E.2d 585 (defendant had key and was seen repeatedly at apartment where contraband was found). *See State v. Baize*, 71 N.C. App. 521, 529, 323 S.E.2d 36, 41 (1984), *cert. denied*, 313 N.C. 174, 326 S.E.2d 34 (1985).

"As with other questions of intent, proof of constructive possession usually involves proof by circumstantial evidence." *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986). Circumstantial evidence is evidence that is applied indirectly "by means of circumstances from which the existence of the principal fact may reasonably be deduced or inferred." 1 Brandis on North Carolina Evidence 3d § 76 (1988). The principle that circumstantial evidence may support proof of facts through inference or deduction is the same principle underlying constructive possession and transfer: from circumstances indicating the power and intent to control contraband, its possession with intent to transfer and the transfer itself may be inferred. Whether the evidence of constructive possession or transfer is direct, circumstantial, or both, the trial court, in ruling on the motion for nonsuit, must consider "evidence favorable to the State . . . *as a whole* in determining its sufficiency." *State v. Beaver*, 317 N.C. at 648, 346 S.E.2d at 479 (quoting *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980)).

We hold that, considered as a whole, as required, the circumstantial evidence of defendant's power and intent to control the sale of dilaudid on both dates listed in the indictments was sufficient to support an inference of both his possession with an intent to sell or deliver that controlled substance and his participation in the transfer transactions themselves. First, constructive possession can be reasonably inferred from the fact of ownership of premises where contraband is found. Such ownership is strong evidence of control and "gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession." *State v. Harvey*, 281 N.C. at 12, 187 S.E.2d at 714. There was ample evidence that defendant was the owner of Doris' Game Room, where both sales transactions took place. This evidence of control was bolstered by the exercise of physical custody evinced by defendant's letting

STATE v. THORPE

[326 N.C. 451 (1990)]

one parole officer into Doris' Game Room with his key and by another officer's observing defendant alone in the game room or behind its bar on more than one occasion. The inference of knowledge and possession by virtue of ownership and custody of the game room was buttressed on both occasions cited in the indictments by defendant's presence either on the premises or nearby.

Second, defendant's participation in the sale of dilaudid could be deduced from testimony that he had directed the agent to enter the store on April 9th and to "come on inside" on April 16th. This, combined with his knowledge of the aim of her errand, contributed strongly to the totality of circumstances indicating his participation in the sale of the dilaudid. This inference was further supported by an apparent principal-agent relationship with Thomas: on April 16th, defendant motioned towards Thomas when he told the agent to go to him for her "fours," and on both occasions specified in the indictments Thomas went behind the bar for the dilaudid tablets, a location where typically only employees, or employers, are permitted.

The evidence of defendant's constructive possession and sale of the contraband, considered as a whole, thus was sufficient to support the trial court's denial of defendant's motion for nonsuit, and the trial court did not err in so ruling. Accordingly, the decision of the Court of Appeals is

Reversed.

Justice MITCHELL dissenting.

For the reasons fully set forth by Judge Orr in the opinion for the majority in the Court of Appeals, 94 N.C. App. 270, 380 S.E.2d 777 (1989), I dissent.