STATE v. TORRES-GONZALEZ

[227 N.C. App. 188 (2013)]

STATE OF NORTH CAROLINA
v.
JOSE JOEL TORRES-GONZALEZ

No. COA12-831

Filed 7 May 2013

1. **Search and Seizure—warrant—probable cause—drugs**

    The search warrant in a cocaine trafficking prosecution was supported by probable cause where the detective laid out a number of specific facts that would have supported a belief that the contraband could have been found at the location to be searched.

2. **Drugs—cocaine—conspiracy to traffic and constructive possession—evidence sufficient**

    The trial court properly denied defendant's motion to dismiss charges of conspiracy to traffic in cocaine by possession and trafficking in cocaine by possession where a reasonable juror could have inferred that defendant and another individual (Blanco) agreed to traffic in and constructively possessed approximately 425 grams of cocaine. A series of events with a detective, Blanco, and defendant, taken together, constituted substantial evidence sufficient to establish conspiracy to traffic, and the fact that Blanco went to defendant's house to pick up the drugs before driving to a parking lot to complete the sale with the detective was substantial evidence of constructive possession.

3. **Drugs—verdicts—conspiracy to traffic —trafficking by possession—not inconsistent**

    Verdicts convicting defendant of conspiracy to traffic in cocaine by possession but not convicting him of trafficking by possession did not present any inconsistency, legal or otherwise, because conspiracy to traffic by possession does not include possession as an element.

Appeal by Defendant from Judgment entered 24 January 2012 by Judge Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 14 February 2013.

*Attorney General Roy Cooper, by Special Deputy Attorneys General Lars F. Nance and Valerie Bateman, for the State.*

*A. Wayne Harrison for Defendant.*

STEPHENS, Judge.

*Procedural History and Evidence*

From 17 to 20 January 2012, Jose[1] Joel Torres-Gonzalez ("Defendant") was tried on charges of conspiracy to traffic in cocaine and trafficking by possession of cocaine. The evidence presented at trial tended to show the following:

Detective Mounce,[2] an officer with the Guilford County Sheriff's Department in the Vice Narcotics Division, was working undercover when he was introduced to Ramone Ramirez Blanco ("Blanco") on 22 October 2010. At that time, Blanco was a suspected drug dealer, and Detective Mounce was meeting with him to purchase a small amount of cocaine, make sure it was of good quality, and then build a relationship with Blanco in order to buy larger amounts of cocaine.

After the initial meeting, Detective Mounce continued to meet with Blanco and started to inquire about larger quantities of cocaine. Blanco told Detective Mounce that his source was nervous about selling to someone the source did not know. Despite that, Detective Mounce and Blanco eventually set up a deal for 16 November 2010. The deal was for the sale of fifteen ounces, about 425 grams, of cocaine to Detective Mounce for $18,000.

On 16 November 2010, Detective Mounce arrived at the planned meeting location, the Belk Lot at the Four Seasons Mall, around 6:30 p.m. The meeting was set for 7:00 p.m. and Detective Mounce called Blanco at 6:49 p.m. to make sure he was going to arrive at the agreed-upon time. Blanco arrived at 7:07 p.m. Detective Mounce identified Blanco because he was driving the same green F-150 truck that he had driven throughout Detective Mounce's dealings with him.

Blanco arrived at the meeting with Defendant in the passenger seat. This was the first time that Detective Mounce had come in contact with Defendant. Blanco told Detective Mounce that they would get the cocaine once they saw the money. Detective Mounce then waved for undercover Detective Gordon Snaden, who had the money, to drive over. Both Blanco and Defendant observed the money in the car and then nodded their heads. At that point, Blanco informed Detective Mounce that

---

1. To the extent that the name "José" is typically written with an accent on the letter "e," that diacritic is not reflected in the court records.

2. Detective Mounce's first name is not provided in the record on appeal.

STATE v. TORRES-GONZALEZ

[227 N.C. App. 188 (2013)]

he and Defendant had to go get the cocaine, and all four people left the parking lot.

After leaving the lot, Detective Mounce went to Gander Mountain, a hunting and fishing store, to wait for Blanco to contact him. The plan was to meet back in the same parking lot to complete the transaction. While Detective Mounce waited at Gander Mountain, Blanco and Defendant drove to Blanco's home where Defendant's vehicle was parked. The plan was for Defendant to go to his home, get the drugs, and then meet Blanco at a nearby Food Lion where Blanco would pick up the drugs.

Shortly after, Blanco left his house and went to Food Lion. After waiting for a period of time, Blanco called Defendant, and Defendant told Blanco that there were people at his house and that Blanco needed to come there to pick up the cocaine. Around the same time, the Sheriff's Department — having used a GPS to track Blanco's vehicle to Food Lion — enlisted Captain Anthony Caliendo ("Captain Caliendo") to follow Blanco. Captain Caliendo arrived at Food Lion around 8:10 p.m. and began surveillance on Blanco's green pickup truck.

After speaking with Defendant, at 8:37 p.m., Blanco left Food Lion and went to Defendant's house to pick up the drugs. Blanco was followed clandestinely by Captain Caliendo, who had been told to keep the vehicle under surveillance. When Blanco retrieved the drugs, Defendant told him to come back with the money and make sure he was not being followed. Captain Caliendo was given instructions to remain at Defendant's home and keep the residence under observation.

At 8:39 p.m., Blanco called Detective Mounce and told him that he would be at the Belk parking lot with the drugs in ten minutes. However, at 9:01 p.m., when Blanco arrived in the green pickup truck, he noticed a Greensboro Police Department ("GPD") patrol car in the parking lot, which caused him to move the location of the meeting to a nearby Home Depot. The sale of cocaine between Blanco and Detective Mounce was completed in the Home Depot parking lot and Blanco was arrested thereafter.

While the police were processing Blanco's possessions, they confiscated two cell phones, one of which had been ringing repeatedly. The number listed by caller ID was later matched to Defendant. By tracing the caller's phone number, the police were able to determine Defendant's address. This was the same address Blanco had visited to pick up the cocaine.

The police obtained a search warrant for Defendant's address around 11:20 p.m. Captain Caliendo had been watching the house

STATE v. TORRES-GONZALEZ

[227 N.C. App. 188 (2013)]

throughout the application process. The search warrant identified the house and address to be searched and the applicant — Detective J.D. Murphy. The first paragraph of the attached affidavit stated the facts concerning Detective Mounce's dealings with Blanco and a then-unidentified "Hispanic male," who was later determined to be Defendant. It stated that Blanco and Defendant met with Detective Mounce, that Blanco went to Defendant's address to get the drugs, and that Blanco delivered the drugs to Detective Mounce. The affidavit also identified the cell phone that was confiscated from Blanco as registered to Defendant, who lived at the address that was the subject of the search.

The additional paragraphs of the affidavit laid out the items that could be found during the search and why such items, in the applicant's experience, were related to the dealing of narcotics. Some of the items identified in the application were drugs, guns, jewelry, U.S. currency, and paraphernalia used to measure or weigh various controlled substances.

The warrant was issued, and, during the search, police found two $100 bills, two cardboard boxes containing a total of fifteen bundles of money, a paper bag with seven envelopes of money, two individual envelopes containing more cash, and Defendant's wallet, which contained $342. The cash found at the scene totaled $115,371. The police also found triple-beam scales and a business card with Defendant's name and a phone number. The number on the card matched the number that had repeatedly appeared on Blanco's caller ID. Further, the mail found at the address was directed to Defendant. Based on that evidence, Defendant was arrested and taken into custody.

At the close of the State's evidence, Defendant moved to dismiss both counts, and the trial court denied that motion. Defendant did not put on any evidence, and, following the trial, the jury returned a verdict of guilty on the felony charge of conspiracy to traffic in cocaine and not guilty on the felony charge of trafficking by possession of cocaine. Defendant was sentenced to a minimum of 70 months and a maximum of 84 months in prison, with credit for seven days served. Defendant appeals, and we find no error.

*Discussion*

*I. Motion to Suppress the Evidence Obtained
Pursuant to the Search Warrant*

[1] Defendant first argues that the search warrant was not supported by probable cause and the trial court erred in denying his motion to

suppress the evidence obtained through execution of the search warrant. We disagree.

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000). "The standard for a court reviewing the issuance of a search warrant is whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *State v. Ledbetter*, 120 N.C. App. 117, 121, 461 S.E.2d 341, 343 (1995) (citation and quotation marks omitted). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed." *State v. Edwards*, 185 N.C. App. 701, 703, 649 S.E.2d 646, 648 (citation and quotation marks omitted), *disc. review denied*, 362 N.C. 89, 656 S.E.2d 281 (2007).

An application for a search warrant must contain "[a]llegations of fact supporting the statement. The statements must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places or in the possession of the individuals to be searched[.]" N.C. Gen. Stat. § 15A-244(3) (2011). "Probable cause need not be shown by proof beyond a reasonable doubt, but rather [by] whether it is more probable than not that drugs or other contraband will be found at a specifically described location." *Edwards*, 185 N.C. App. at 704, 649 S.E.2d at 649 (2007). "Probable cause cannot be shown by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based[.]" *State v. Campbell*, 282 N.C. 125, 130-31, 191 S.E.2d 752, 756 (1972) (citation and quotation marks omitted).

In *Campbell*, our Supreme Court held that a search warrant lacked probable cause when the affidavit failed to provide any underlying details and merely stated that the affiant had arrest warrants for different subjects who allegedly lived at the prescribed address. *Id.* at 130–32, 191 S.E.2d at 756–57 ("Therefore, nothing in the foregoing affidavit affords a reasonable basis upon which the issuing magistrate could conclude that any illegal possession or sale of narcotic drugs had occurred, or was occurring, on the premises to be searched."). Here, the affiant was an officer with more than twenty-two years of experience in law

enforcement who had previously been involved in numerous investigations concerning the sale of illegal substances. The affidavit attached to the application included (1) background on the circumstances of Detective Mounce's dealings with Blanco, (2) details that the person who acquired the cocaine went to the house identified in the search warrant, (3) the fact that the same person then delivered the cocaine to Detective Mounce, (4) the fact that a phone registered to Defendant repeatedly called Blanco after Blanco was arrested, and (5) the fact that Defendant resided at the house that was the subject of the search warrant.

The information provided in the application for the search warrant in this case provides a factual basis for making a probable cause determination. Unlike *Campbell*, where the officer making the application only made conclusory statements, the detective in this case laid out a number of specific facts that would support a belief that the contraband could be found at the location to be searched. We hold that the information provided in the application constituted a "substantial basis" from which the magistrate could find probable cause existed, and, thus, that the trial court did not err in denying the motion to suppress.

## II. *Defendant's Motion to Dismiss*

[2] Defendant argues that the trial court erred in denying his motion to dismiss as to both counts. "This Court reviews the trial court's denial of a motion to dismiss *de novo.*" *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "[T]he question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged . . . and (2) of [the] defendant's being the perpetrator of such offense." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (citation omitted), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). When ruling on a motion to dismiss for insufficient evidence, "the trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor." *State v. Miller*, 363 N.C. 96, 98, 678 S.E.2d 592, 594 (2009).

"The test of the sufficiency of the evidence to withstand [a motion to dismiss] is the same whether the evidence is circumstantial, direct, or both." *State v. Cutler*, 271 N.C. 379, 383, 156 S.E.2d 679, 682 (1967) (citation omitted). Where the evidence is solely circumstantial, "[t]he question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." *Id.* (citation and quotation marks omitted). "[T]he question for the trial court is not

one of weight, but of the sufficiency of the evidence." *State v. Harris*, 361 N.C. 400, 402, 646 S.E.2d 526, 528 (2007). "Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal." *State v. Tyson*, 195 N.C. App. 327, 330, 672 S.E.2d 700, 703 (2009) (citation and quotation marks omitted). However, where the "evidence raises merely a suspicion or conjecture as to . . . [the] defendant's identity as the perpetrator, the motion should be allowed." *State v. Collins*, 50 N.C. App. 155, 158, 272 S.E.2d 603, 605 (1980).

"A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner." *State v. Worthington*, 84 N.C. App. 150, 162, 352 S.E.2d 695, 703, disc. review *denied*, 319 N.C. 677, 356 S.E.2d 785 (1987). "The charge of conspiracy to violate the law and the charge of the consummation of the conspiracy by an actual violation of the law are charges of separate offenses." *State v. Lippard*, 223 N.C. 167, 169, 25 S.E.2d 594, 596 (citation omitted), *cert. denied*, 320 U.S. 749, 88 L. Ed. 445 (1943). "In order for a defendant to be found guilty of the substantive crime of conspiracy, the State must prove that there was an agreement to perform every element of the underlying offense." *State v. Dubose*, 208 N.C. App. 406, 409, 702 S.E.2d 330, 333 (2010). "As soon as the union of wills for the unlawful purpose is perfected, the crime of conspiracy is complete, and no overt act is required." *State v. Merrill*, 138 N.C. App. 215, 218, 530 S.E.2d 608, 611 (2000) (citations omitted). Furthermore, "the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice to withstand [the] defendant's motion to dismiss. . . . [and t]he existence of a conspiracy may be established by direct or circumstantial evidence[.]" *Worthington*, 84 N.C. App. at 162, 352 S.E.2d at 703 (citation omitted). This may be shown "by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." *Id.* (citation omitted). Therefore, "[i]n order to find [the] defendant guilty of conspiracy to traffic in cocaine . . . , the State must prove that [the] defendant entered into an agreement to traffic by possessing cocaine . . . , and intended the agreement to be carried out at the time it was made." *State v. Jenkins*, 167 N.C. App. 696, 700–01, 606 S.E.2d 430, 433 (citation omitted) (holding that the "evidence was sufficient to submit the charge of conspiracy to traffic in cocaine by possession to the jury" when the defendant and two co-conspirators were pulled over in the process of counting thousands of dollars and a sufficient amount of cocaine was later found in the cabin of the truck), *affirmed per curiam*, 359 N.C. 423, 611 S.E.2d 833 (2005).

"To establish trafficking by possession, the State must show that a defendant (1) knowingly possessed a given controlled substance; and (2) that the amount possessed was greater than 28 grams." *State v. Wiggins*, 185 N.C. App. 376, 386, 648 S.E.2d 865, 872 (citation omitted), *disc. review denied*, 361 N.C. 703, 653 S.E.2d 160 (2007). The element of knowing possession may be proved by showing constructive possession. *State v. Thorpe*, 326 N.C. 451, 454, 390 S.E.2d 311, 313 (1990). "An accused has possession of [contraband] . . . when he has both the power and the intent to control its disposition or use." *Id.* (citation and quotation marks omitted). "[Constructive possession] must be inferred from the circumstances. Where such materials are found on the premises under the control of an accused, this fact . . . gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury[.]" *Id.* (citation omitted). Thus, "[c]onstructive possession has been found when the contraband was on the property in which the defendant had some exclusive possessory interest and there was evidence of his or her presence on the property." *Id.* at 454–55, 390 S.E.2d at 313.

In this case, the evidence offered by the State shows that Detective Mounce had set up a time and location for the sale of approximately 425 grams of cocaine and that, when Blanco arrived at the location, he was with Defendant. Then Defendant, not just Blanco, came to Detective Mounce to look at the money. Defendant and Blanco left the location together, and Defendant told Blanco to wait at the Food Lion parking lot where the drugs would be delivered. Later, Defendant told Blanco to come back to Defendant's house to pick up the drugs to complete the sale. These events, taken together, constitute substantial evidence sufficient to establish conspiracy to traffic in cocaine by possession. Additionally, the fact that the State's evidence tended to show that Blanco went to Defendant's house to pick up the drugs before driving to the Four Seasons and Home Depot parking lots to complete the sale with Detective Mounce could lead the jury to infer that the "contraband was on the property in which the defendant had some exclusive possessory interest and there was evidence of his or her presence on the property." This constitutes substantial evidence of constructive possession of the cocaine and, thus, trafficking in cocaine by possession. *See Thorpe*, 326 N.C. at 454–55, 390 S.E.2d at 313.

From this evidence, a reasonable juror could infer that Defendant and Blanco agreed to traffic in and constructively possessed approximately 425 grams of cocaine. Viewing the evidence in a light most favorable to the State, we therefore hold that the trial court did not err in

denying Defendant's motion to dismiss as to either conspiracy to traffic in cocaine by possession or trafficking in cocaine by possession.

### III.  The Jury Verdicts and Inconsistency

**[3]** Defendant's final argument is that the jury verdicts convicting him of conspiracy to commit the felony of trafficking by possession, but finding him not guilty of committing the felony of trafficking by possession, are legally inconsistent and cannot be "logically or rationally supported" because both crimes require Defendant to have "possession." Defendant asserts that the jury verdicts were legally inconsistent because the jury was required to find that Defendant possessed cocaine for both conspiracy to traffic by possession and trafficking by possession, but he was only found guilty of the former. He contends that the jury, by finding Defendant not guilty of trafficking by possession, conclusively answered the question of possession for both charges and precluded itself from finding that he was guilty of the other charge, conspiracy to traffic by possession. We are unpersuaded.

When reviewing jury verdicts for inconsistency, "a distinction is drawn between verdicts that are merely inconsistent and those which are legally inconsistent and contradictory." *State v. Mumford*, 364 N.C. 394, 398, 699 S.E.2d 911, 914 (2010) (emphasis in original). A verdict is legally inconsistent or mutually exclusive "when [it] purports to establish that the defendant *is guilty* of two separate and distinct criminal offenses, the nature of which is such that guilt of one necessarily excludes guilt of the other." *Id.* at 400, 699 S.E.2d at 915 (citation, quotation marks, and brackets omitted) (emphasis added).

In *State v. Speckman*, 326 N.C. 576, 391 S.E.2d 165 (1990), a conviction was reversed when the defendant was found guilty of both embezzlement and obtaining property by false pretenses. *Id.* at 580, 391 S.E.2d at 168. There the Court held that the crimes were mutually exclusive because embezzlement required that the property be obtained *lawfully* and the false pretenses charge required that the property be obtained *unlawfully*. *Id.* at 578, 391 S.E.2d at 166-67. Thus, under *Speckman*, a person cannot be found *guilty* of two crimes "arising from the same act or transaction" where their elements are mutually exclusive. *See id.* at 578, 391 S.E.2d at 167.

A verdict can be valid, however, when it is "merely inconsistent." A verdict is merely inconsistent when its rendering "represent[s] an apparent flaw in the jury's logic," but the elements of the crimes are not mutually exclusive. *See Mumford*, 364 N.C. at 400, 699 S.E.2d at 915.

"[B]ecause each count of an indictment is, in fact and theory, a separate indictment, []inconsistencies [are] permissible, and not found to be legally contradictory, as long as there [is] sufficient evidence to support the guilty verdict." *See id.* (citation and quotation marks omitted). Put simply, conviction for an overarching offense does not require a conviction of the lesser-included offense. *See State v. Blackmon,* 208 N.C. App. 397, 405, 702 S.E.2d 833, 839 (2010) (citation, quotation marks, and brackets omitted) (holding that the jury's conviction for felonious larceny and deadlock as to the charge of breaking and entering was merely inconsistent and not mutually exclusive because the jury's failure to convict on the lesser-included charge of breaking and entering does not preclude a conviction of the "larger" offense — *i.e.,* felonious larceny — when there is a finding that "the defendant was engaged in the conduct described under either of the offenses").

Defendant's argument here, however, is based on a flawed understanding of the nature of the crime of conspiracy to traffic by possession. Despite its name, the crime does not require that the State prove possession. *See Jenkins,* 167 N.C. App. at 700, 606 S.E.2d at 433. Indeed, possession cannot be an element of the crime of conspiracy to traffic by possession because the crime of *conspiracy* is only "an agreement to commit a substantive criminal act, here trafficking by possession of cocaine. . . . [N]o overt act in furtherance of the agreement is required." *State v. Ledwell,* 171 N.C. App. 328, 333–34, 614 S.E.2d 412, 415 (citations omitted), *disc. review denied,* 360 N.C. 73, 622 S.E.2d 624 (2005); *see also State v. Suggs,* 117 N.C. App. 654, 661, 453 S.E.2d 211, 215 (1995) ("To hold a defendant liable for the substantive crime of conspiracy, the State must prove an *agreement to perform* every element of the crime.") (citations omitted) (emphasis added). In other words, upon the State's proof that Defendant and Blanco entered into an agreement to traffic by possessing cocaine weighing at least 28 grams and intended the agreement to be carried out when it was made, the crime of conspiracy to traffic in cocaine was complete.

Because the crime of conspiracy to traffic by possession does not include possession as an element, the fact that Defendant was convicted of that crime and not convicted of the crime of trafficking by possession does not present any inconsistency, legal or otherwise. Accordingly, Defendant's argument is overruled.

NO ERROR.

Judges STROUD and DILLON concur.