STATE OF NORTH CAROLINA v. ANDRE LEVERN MILLER

No. 309A08

(Filed 20 March 2009)

**Drugs— constructive possession—proximity to drugs—identifying documents in room**

The evidence of possession of a controlled substance by constructive possession was sufficient where defendant was found within touching distance of the crack cocaine and his identity documents were in the same room. Although defendant did not have exclusive control of the premises, the only other individual in the room was not near any of the cocaine; the circumstances permit a reasonable inference that defendant had the intent and capability to exercise control and dominion over the cocaine in the room.

Justice BRADY dissenting.

Justice TIMMONS-GOODSON dissenting.

Justice HUDSON joins in this dissenting opinion.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 191 N.C. App. 124, 661 S.E.2d 770 (2008), reversing and remanding a judgment entered 15 February

2007 by Judge Catherine C. Eagles in Superior Court, Forsyth County. Heard in the Supreme Court 19 November 2008.

> *Roy Cooper, Attorney General, by Stanley G. Abrams, Assistant Attorney General, for the State-appellant.*
>
> *Paul F. Herzog for defendant-appellee.*

EDMUNDS, Justice.

In this case, we consider whether the evidence presented at defendant's trial for possession of a controlled substance was sufficient to support a finding of guilt based upon the theory of constructive possession. When the evidence showed, among other things, that defendant was found within touching distance of the crack cocaine in question and defendant's identity documents were in the same room, we conclude that the evidence was sufficient to support the jury's verdict. Accordingly, we reverse the opinion of the Court of Appeals.

At trial, the State presented evidence that on 8 December 2005, Winston-Salem Police Detective R.J. Paul obtained a search warrant for the residence at 1924 Dacian Street after citizen complaints and resulting surveillance revealed heavy vehicle and pedestrian traffic in the area. Later that day, a Winston-Salem Police Special Enforcement Team entered the residence, commanding everyone to get on the floor. The officers found several individuals in the living room. Defendant, who was sitting on the corner of a bed in an adjoining room, slid to the floor as officers entered. While he was on the floor, defendant's head lay between one to four feet from the bedroom door. Another individual in the bedroom remained seated in a chair about eight feet from the door.

Detective Paul entered the bedroom and recovered a small white rocklike substance from the end of the bed where defendant had been sitting.[1] In addition, Detective Paul recovered a plastic bag containing several small white rocks from behind the open bedroom door, about two feet from where defendant had been lying on the floor. Later testing revealed that all the material recovered from the bedroom was crack cocaine weighing a total of 1.3 grams. Defendant's birth certificate and state-issued identification card were found on a television stand in the bedroom, along with several small plastic jewelry bags.

---

1. The record is subject to interpretation as to whether the contraband was in plain view. As detailed in the body of this opinion, we consider evidence in the light most favorable to the State.

An officer testified that cocaine is normally packaged in some type of plastic bag and that plastic jewelry bags are sometimes used.

Two of defendant's children lived at 1924 Dacian with their mother, Alicia Johnson. Testifying on behalf of defendant, Johnson stated that defendant did not live in the house and was there at the time of the search because he was preparing to pick up the children from school. She further testified that the furnishings in the bedroom where defendant was sitting when the police entered belonged to her and that the crack cocaine found in the room with defendant also was hers. However, she had not been at the residence when police exe-, cuted the search warrant.

Defendant was tried for possessing cocaine with the intent to sell and deliver, in violation of N.C.G.S. § 90-95(a)(1); maintaining a place to keep a controlled substance, in violation of N.C.G.S. § 90-108(a)(7); and attaining the status of habitual felon, as defined in N.C.G.S. § 14-7.1. At the close of the State's evidence, the trial court allowed defendant's motion to dismiss the charge of maintaining a place to keep a controlled substance, but denied defendant's motion to dismiss the possession charge. After defendant presented evidence, the court denied his renewed motion to dismiss the possession charge. The jury found defendant guilty of simple possession of cocaine and attaining habitual felon status, and the trial court sentenced him to 107 to 138 months imprisonment.

Defendant appealed. In a divided opinion, the Court of Appeals reversed, applying a totality of the circumstances test to find that the evidence was insufficient to support a conclusion that defendant constructively possessed the cocaine. *Miller*, —— N.C. App. at ——, 661 S.E.2d at 773. The dissenting judge contended that the evidence was sufficient to support defendant's conviction. *Id.* at ——, 661 S.E.2d at 774-75 (Tyson, J., dissenting). The State appealed as of right on the basis of the dissent.

When ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. *State v. McCullers*, 341 N.C. 19, 28-29, 460 S.E.2d 163, 168 (1995). Any contradictions or conflicts in the evidence are resolved in favor of the State, *State v. Malloy*, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983), and evidence unfavorable to the State is not considered, *State v. Parker*, 354 N.C. 268, 278, 553 S.E.2d 885, 894, *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). The trial court must decide " 'only

whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense.' " *State v. Turnage*, 362 N.C. 491, 493, 666 S.E.2d 753, 755 (2008) (quoting *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996)). " 'Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Crawford*, 344 N.C. at 73, 472 S.E.2d at 925). When the evidence raises no more than a suspicion of guilt, a motion to dismiss should be granted. *State v. Lee*, 348 N.C. 474, 488-89, 501 S.E.2d 334, 343 (1998). However, so long as the evidence supports a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also "permits a reasonable inference of the defendant's innocence." *State v. Butler*, 356 N.C. 141, 145, 567 S.E.2d 137, 140 (2002).

The State prosecuted defendant upon the theory that he constructively possessed crack cocaine. A defendant constructively possesses contraband when he or she has "the intent and capability to maintain control and dominion over" it. *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986). The defendant may have the power to control either alone or jointly with others. *State v. Fuqua*, 234 N.C. 168, 170-71, 66 S.E.2d 667, 668 (1951). Unless a defendant has exclusive possession of the place where the contraband is found, the State must show other incriminating circumstances sufficient for the jury to find a defendant had constructive possession. *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 271 (2001).

Our cases addressing constructive possession have tended to turn on the specific facts presented. *See, e.g., Butler*, 356 N.C. at 143-44, 147-48, 567 S.E.2d at 138-39, 141 (finding constructive possession when the defendant acted suspiciously upon alighting from a bus; hurried to a taxicab and yelled "let's go" three times; fidgeted and ducked down in the taxicab once in the back seat, then exited the taxicab at the instruction of police officers and walked back to the bus terminal without being told to do so, drawing officers away from the taxicab; and drugs were recovered from under the driver's seat of the taxicab approximately ten minutes later when the cab returned from giving another customer a ride); *Matias*, 354 N.C. at 550-52, 556 S.E.2d at 270-71 (finding constructive possession when officers, after smelling marijuana emanating from a passing automobile occupied by the defendant and three others, recovered marijuana and cocaine stuffed between the seat pad and back pad where the defendant had been seated, and an officer testified the defendant was the only occu-

pant who could have placed the package there); *State v. Brown*, 310 N.C. 563, 569-70, 313 S.E.2d 585, 588-89 (1984) (finding sufficient other incriminating circumstances when cocaine and other drug packaging paraphernalia were found on a table beside which the defendant was standing when the officers entered the apartment, the defendant had been observed at the apartment multiple times, possessed a key to the apartment, and had over $1,700 in cash in his pockets); *State v. Baxter*, 285 N.C. 735, 736-38, 208 S.E.2d 696, 697-98 (1974) (finding constructive possession when the defendant was absent from the apartment when police arrived but a search of the bedroom that the defendant and his wife occupied yielded men's clothing and marijuana in a dresser drawer, with additional marijuana found in the pocket of a man's coat in the bedroom closet); *State v. Allen*, 279 N.C. 406, 408, 412, 183 S.E.2d 680, 682, 684-85 (1971) (finding constructive possession when, even though the defendant was absent from the apartment at the time of a search, heroin was found in the bedroom and kitchen; the defendant's identification and other personal papers were in the bedroom, public utilities for the premises were listed in the defendant's name; and a witness testified that the defendant had provided heroin to him for resale). These and other cases demonstrate that two factors frequently considered are the defendant's proximity to the contraband and indicia of the defendant's control over the place where the contraband is found.

Here, police found defendant in a bedroom of the home where two of his children lived with their mother. When first seen, defendant was sitting on the same end of the bed where cocaine was recovered. Once defendant slid to the floor, he was within reach of the package of cocaine recovered from the floor behind the bedroom door. Defendant's birth certificate and state-issued identification card were found on top of a television stand in that bedroom. The only other individual in the room was not near any of the cocaine. Even though defendant did not have exclusive possession of the premises, these incriminating circumstances permit a reasonable inference that defendant had the intent and capability to exercise control and dominion over cocaine in that room.

The Court of Appeals majority found this evidence insufficient, relying in part on the absence of evidence that defendant appeared nervous or made any observed motion to hide anything. —— N.C. App. at ——, 661 S.E.2d at 773. However, proper application of the standard of review focuses our analysis on the evidence that the State did present in these highly fact-specific cases, not on evidence that a

**STATE v. MILLER**

[363 N.C. 96 (2009)]

reviewing court thinks the State should have presented. In other words, absence of evidence is not evidence of absence. Viewing the evidence admitted here in the light most favorable to the State, we hold that sufficient evidence was presented from which a reasonable mind could conclude that defendant constructively possessed cocaine. Accordingly, the trial court properly denied defendant's motion to dismiss. The decision of the Court of Appeals is reversed.

REVERSED.

Justice BRADY dissenting.

Today's majority opinion dangerously turns a blind eye to our well-established precedent setting out the law of constructive possession. The evidence the State presented against defendant was grossly insufficient to establish a charge of possession of cocaine, and therefore, the trial court should have granted defendant's motion to dismiss. Because the majority decision leads our constructive possession jurisprudence down a perilous road of guilt by mere proximity without substantial corroboration, I respectfully dissent.

## BACKGROUND

On 8 December 2005, a team of seven or eight law enforcement officers with the Special Enforcement Team (SET) of the Winston-Salem Police Department raided the residence located at 1924 Dacian Street, Winston-Salem, North Carolina, in execution of a search warrant. Upon entering the small, single family residence, law enforcement officers found at least six adults inside.[2] In a bedroom in the front left corner of the residence they discovered Andre Miller (defendant) with another adult male. The record does not contain the exact dimensions of the bedroom, but it was estimated by law enforcement that the foot of the bed was approximately three feet from the door to the room.[3] Defendant was sitting on the corner of

---

2. Detective R.J. Paul of the Winston-Salem Police Department testified that there were six individuals, "[g]ive or take a few," at 1924 Dacian Street when the raid occurred. From the video footage taken that day by law enforcement, which was entered into evidence as State's Exhibit One, it appears that at least seven adults and at least two children were inside the residence. According to the Forsyth County Tax Administration Office the residence at 1924 Dacian Street has 1176 square feet of living space.

3. Alicia Johnson, the lessee of 1924 Dacian Street during the events in question, testified at trial that when the bedroom door was open, it came within two to three inches of the bed's mattress.

STATE v. MILLER

[363 N.C. 96 (2009)]

the bed, near the door, when the SET team entered the residence. The other individual was sitting in the chair next to the bed at that time. SET officers ordered everyone in the residence to lie on the ground and defendant followed these orders without hesitation or protest. After the SET team secured the residence and handcuffed defendant, detectives with the Winston-Salem Police Department entered 1924 Dacian Street to seize evidence. In the bedroom where defendant was found law enforcement seized a plastic bag, containing what was later determined to be cocaine, located in a corner behind the open bedroom door; empty plastic jewelry bags between a television and a DVD player on an entertainment center; and one small pellet of a white, rock-like substance, about the size of a BB, among the disheveled sheets and comforter of the unmade bed.[4] Defendant's North Carolina Identification Card[5] and birth certificate were found on the entertainment center. Additionally, eighty-five dollars in United States currency was found on defendant's person.

On 1 May 2006, the Forsyth County Grand Jury returned true bills of indictment charging defendant with (1) maintaining a place to keep a controlled substance in violation of N.C.G.S. § 90-108(a)(7); (2) possessing cocaine with the intent to sell and deliver in violation of N.C.G.S. § 90-95(a)(1); and (3) attaining the status of habitual felon in violation of N.C.G.S. § 14-7.1. During trial, after the close of the State's evidence, defendant moved to dismiss all charges. At this time the presiding trial judge, the Honorable Catherine C. Eagles, granted defendant's motion to dismiss the charge of maintaining a place to keep a controlled substance.

During defendant's case-in-chief, Alicia Johnson, the lessee of 1924 Dacian Street on 8 December 2005 and mother of defendant's two children, testified. Her testimony reflected that defendant did not live at 1924 Dacian Street and was at her residence on the day in question because she had asked him to pick up their children from school while she went Christmas shopping. She further stated that the con-

---

4. The small plastic bag found behind the door, the plastic jewelry bags found on the entertainment center, and the white, rock-like substance found on the bed can all be seen in State's Exhibit One, as well as an image of defendant's State of North Carolina Identification Card. As the State admitted during oral arguments, the "rock" of cocaine found on the bed was not discovered in a "small corner cut from a plastic bag" as erroneously noted in the Court of Appeals opinion.

5. The trial court, Court of Appeals majority opinion, Court of Appeals dissenting opinion, and State's counsel at oral arguments incorrectly refer to defendant's North Carolina Identification Card as his driver's license. The State reluctantly admitted to this error during oral arguments, as it was clearly apparent in State's Exhibit One.

trolled substances were found in her personal bedroom and belonged to her, not defendant. At the close of evidence defendant again renewed his motion to dismiss the possession charge, which was denied. The jury returned a verdict of guilty of the lesser included offense of possession of cocaine and of being an habitual felon.

Defendant appealed to the Court of Appeals, which reversed his possession conviction after finding that "[v]iewing the evidence in the light most favorable to the State, the totality of the circumstances in this case is not sufficient to support a finding of constructive possession of cocaine sufficient to survive [defendant's] motion to dismiss." *State v. Miller,* —— N.C. App. ——, 661 S.E.2d 770, 773 (2008). The case is before this Court on the basis of a dissent at the Court of Appeals.

## ANALYSIS

As noted by several legal scholars and this Court, the law of possession is a morass of confusion and inconsistency. *See State v. McNeil,* 359 N.C. 800, 807-08, 617 S.E.2d 271, 276 (2005) (quoting *Nat'l Safe Deposit Co. v. Stead,* 232 U.S. 58, 67 (1914) (stating that " 'there is no word more ambiguous in its meaning than [p]ossession. It is interchangeably used to describe actual possession and constructive possession which often so shade into one another that it is difficult to say where one ends and the other begins.' " (quoting *Nat'l Safe Deposit Co. v. Stead,* 232 U.S. 58, 67 (1914) (alteration in original))); 1 Wayne R. LaFave, *Substantive Criminal Law* § 6.1(e), at 432 (2d ed. 2003) ("The word 'possession' is often used in the criminal law without definition, which perhaps reflects only the fact that it is 'a common term used in everyday conversation that has not acquired any artful meaning.' ") (citation omitted); *and* Charles H. Whitebread & Ronald Stevens, *Constructive Possession in Narcotics Cases: To Have and Have Not,* 58 Va. L. Rev. 751, 751 (1972) ("[Possession cases] have engendered such conceptual confusion and given rise to so many conflicting rulings 'that for the practitioner the problems are difficult to understand and apparently for the courts impossible to master.' ") (citation omitted). Instead of clarifying existing law, or simply following this Court's well-established precedent, the majority's decision attempts to erase current jurisprudence by allowing any questionable circumstance to qualify as substantial evidence of constructive possession.

"When considering a motion to dismiss, the trial court's inquiry is limited to a determination of 'whether there is *substantial evidence* of each essential element of the offense charged and of the defendant

being the perpetrator of the offense.' " *State v. Butler*, 356 N.C. 141, 145, 567 S.E.2d 137, 139 (2002) (quoting *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996) (emphasis added)). "To be substantial, the evidence need not be irrefutable or uncontroverted; it need only be such as would satisfy a reasonable mind as being 'adequate to support a conclusion.' " *Id.* (quoting *State v. Lucas*, 353 N.C. 568, 581, 548 S.E.2d 712, 721 (2001)).

While a trial court should view the evidence and every reasonable inference in the light most favorable to the State, the standard of substantial evidence requires more than "a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it." *In re Vinson*, 298 N.C. 640, 656-57, 260 S.E.2d 591, 602 (1979) (citing *State v. Guffey*, 252 N.C. 60, 62-63, 112 S.E.2d 734, 735-36 (1960)). If the evidence fails to rise above this threshold, "the motion for nonsuit should be allowed. . . . even though the suspicion so aroused by the evidence is strong.' " *Id.* at 657, 260 S.E.2d at 602 (citations omitted).

To convict defendant of possession of cocaine under a constructive possession theory, the State is required to present substantial evidence that defendant had the " 'intent and capability to maintain control and dominion over' the narcotics." *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001) (quoting *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986)). To do so, the State must show either that (1) defendant had " 'exclusive possession of the place where the narcotics [were] found' "; or (2) that " 'other incriminating circumstances' " existed tending to show that defendant constructively possessed the narcotics found. *Id.* at 552, 556 S.E.2d at 271 (citations omitted). This is no insignificant hurdle for the State to clear, and in this case the State stumbled and fell flat on its face. Yet, the majority still affirms the trial court's denial of defendant's motion to dismiss, even though the State failed to produce substantial evidence to support the possession charge.

In the case *sub judice*, as both the trial court and the Court of Appeals concluded, there was no substantial evidence that defendant had "exclusive possession of the place where the narcotics were found.' " *Id.* Therefore, any analysis of whether substantial evidence exists to support the possession charge should be limited to an inquiry of whether " 'other incriminating circumstances' " were present and were substantial enough to tie defendant to the controlled substance to show that he had the intent and capability to maintain control and dominion over it. *Id.*

Examples of incriminating circumstances from this Court's case law are numerous, and the majority outlines several in its analysis. From this recitation, the majority concludes that "proximity to the contraband and indicia of the defendant's control over the place where the contraband is found" are "frequently considered" in determining what constitutes an incriminating circumstance in a constructive possession case. In the past, this Court has used these factors in this manner in cases involving alleged constructive possession; however, today the majority's expansive ruling in this case boldly stretches beyond the imagination of any of our prior cases. The majority improvidently asserts that defendant's proximity to the drugs found at 1924 Dacian Street, coupled with the fact that his North Carolina Identification Card[6] and birth certificate were found in the same room are sufficient to conclude he constructively possessed the cocaine. This scintilla of unconvincing evidence hardly establishes constructive possession.

First, the majority's use of proximity evidence to establish an incriminating circumstance is dangerously thin. While proximity to narcotics is always a *factor* in constructive possession cases, it has never been the *only* factor, as illustrated by the very cases the majority relies upon. Until today, evidence of more culpable conduct was always needed for this Court to find that a defendant constructively possessed a controlled substance. When the State can show no more than that a "defendant had been in an area where he could have committed the crimes charged," there is no substantial evidence. *State v. Minor,* 290 N.C. 68, 75, 224 S.E.2d 180, 185 (1976). To consider a charge brought on this basis is to ask this Court to "sail in a sea of conjecture and surmise. This we are not permitted to do." *Id.* It has always been understood that more than mere proximity is needed to prove a theory of constructive possession.

In every case the majority cites there is ample evidence of incriminating circumstances in addition to evidence of defendant's proximity to narcotics. In *State v. Butler,* the defendant's suspicious behavior and his concerted effort to evade law enforcement officers provided incriminating evidence along with proximity evidence showing that the defendant was observed reaching into an

---

6. Defendant's North Carolina State Identification Card was never introduced as evidence at trial; however, it was clearly displayed in State's Exhibit One and was shown to the jury in that video. Notably, the North Carolina State Identification Card, issued less than five months before the events in question, did not list 1924 Dacian Street as defendant's address.

area where narcotics were soon discovered. 356 N.C. at 147-48, 567 S.E.2d at 141. In the instant case, defendant displayed no suspicious behavior and followed all instructions given to him by law enforcement. The majority counters that this absence of suspicious behavior is not "evidence of absence," but the majority misses the point and sidesteps the issue. Something more than proximity is needed to prove an incriminating circumstance, and the record contains no substantial evidence that suggests anything incriminating beyond defendant's proximity to the controlled substances by his mere presence in the bedroom.

The majority next relies upon *Matias*, but again ignores that additional factors, combined with proximity evidence, were considered to conclude that incriminating circumstances existed. 354 N.C. at 552-53, 556 S.E.2d at 271. In *Matias*, the defendant was a passenger in a vehicle that had the distinct odor of marijuana and contained rolling papers and marijuana seeds. *Id.* at 552, 556 S.E.2d at 271. Thus, this Court ruled that a jury could reasonably determine the defendant at least had knowledge that narcotics were in the vehicle. *Id.* This evidence was offered in addition to proximity evidence showing that the defendant was the only individual in the vehicle who was able to hide a bag of cocaine between a crease in the seat cushions where it was later discovered. *Id.*

*Matias* is markedly different from the instant case in that it cannot be shown here that defendant even had constructive knowledge that the narcotics were in the bedroom at 1924 Dacian Street. Video footage of the crime scene, shot immediately following the raid, reveals that the narcotics were not in plain view. The small BB-sized pellet of rock cocaine was seized from among the light-colored sheets of a disheveled bed, and the small plastic bag containing cocaine was found on the floor in a dark corner behind an open door. As the trial judge perceptively stated, this bag "could have been there for weeks."[7] Furthermore, there were at least five other adults in the residence when the items were discovered. To conclude that defendant constructively possessed these objects, let alone even knew they

7. In dismissing the charge of maintaining a place to keep a controlled substance, the trial judge noted that the constructive possession charge was primarily being allowed to go before the jury due to the evidence of cocaine found among the bed sheets. As to the bag of cocaine found behind the door, the trial judge stated, "The other cocaine was behind the door. I mean, it could have been there for weeks." This statement indicates that the trial judge did not view the bag of cocaine behind the door as substantial evidence to support the possession charge. Why the majority chooses to do so now is beyond my understanding.

were in the room, is mere conjecture and speculation. Under these circumstances defendant's proximity to the controlled substances means absolutely nothing in relation to the State's theory of constructive possession.

Next, the majority mistakenly relies upon *State v. Brown* to bolster its incriminating circumstances argument. 310 N.C. 563, 569-70, 313 S.E.2d 585, 589 (1984). Again, in *Brown,* evidence of incriminating circumstances was much stronger. In its opinion, this Court specifically found that "there [were] circumstances *other than defendant's proximity* to the contraband materials which tend[ed] to buttress the inference" that the defendant committed the crime charged. *Id.* at 569, 313 S.E.2d at 589 (emphasis added). The narcotics recovered in *Brown* were in plain view of the defendant; the defendant possessed a key to the residence; and law enforcement officers discovered over seventeen hundred dollars in United States currency on the defendant's person. *Id.* at 568-70, 313 S.E.2d at 588-89. No similar circumstances exist in this case. The State could not present any physical evidence or witness testimony indicating that defendant had visited 1924 Dacian Street at any time other than the date in question. Furthermore, law enforcement recovered a mere eighty-five dollars from defendant's person. Logic and common sense dictate that this meager amount of currency is not indicative of someone who is dealing in controlled substances. During oral argument, the State's counsel was questioned on this point and conceded that if significant amounts of currency had been seized from defendant, the prosecutor would have run this evidence up the flagpole before the jury.

Lastly, the majority attempts to use *State v. Baxter,* 285 N.C. 735, 208 S.E.2d 696 (1974), and *State v. Allen,* 279 N.C. 406, 183 S.E.2d 680 (1971), as examples of similar situations in which proximity and indicia of control were sufficient to show incriminating circumstances. Both are critically distinguishable from the present case. In *Baxter,* the State presented evidence, which included men's clothing found in dresser drawers containing marijuana and a man's jacket with marijuana in its pocket, that was sufficient to show the defendant occupied the bedroom in which the narcotics were seized. 285 N.C. at 736-38, 208 S.E.2d at 697-98. In *Allen,* the defendant's United States Uniform Services identification card and several other papers bearing the defendant's name were found in the residence; public utilities for the residence were listed in the defendant's name; and a sixteen year old witness testified that he had obtained heroin from the residence pursuant to the defendant's directions. 279 N.C. at 408, 183 S.E.2d at

684-85. No similar evidence can be found in the present record to justify a finding of incriminating circumstances. No personal effects belonging to defendant were found at the residence, and the State could offer no other proof, aside from physical presence, to suggest defendant had any control over the premises at 1924 Dacian Street.

When evidence of incriminating circumstances are lacking, as they are in the case *sub judice*, this Court has repeatedly rejected theories of constructive possession. For example, in *Minor*, the defendant helped plant a garden and occupied an abandoned residence for a short time near a field where marijuana was cultivated. 290 N.C. at 72-73, 224 S.E.2d at 183-84. Law enforcement found a container in the residence labeled with the defendant's name. *Id.* at 72, 224 S.E.2d at 183. When the defendant was arrested, two wilted marijuana leaves were found in the car in which he had been a passenger. *Id.* at 72, 224 S.E.2d at 183-84. This Court found that under these facts alone, the State had presented insufficient evidence to prove constructive possession of marijuana and ruled the defendant's motion to dismiss should have been granted. *Id.* at 74-75, 224 S.E.2d at 185.

In *State v. McLaurin*, the defendant was convicted of possession of drug paraphernalia under a constructive possession theory. 320 N.C. 143, 144, 357 S.E.2d 636, 637 (1987). Law enforcement searched the defendant's residence pursuant to a search warrant and found drug paraphernalia which contained traces of cocaine, throughout the house. *Id.* In a crawl space beneath the dwelling, law enforcement found three marked one hundred dollar bills that were used in a previous drug transaction. 320 N.C. at 145, 357 S.E.2d at 637. The defendant admitted to living in the residence, and photographs of her were found inside the house along with her Medicaid card. *Id.* However, the defendant did not have exclusive control over the premises, leading this Court to conclude that "because there was no evidence of other incriminating circumstances linking her to [the seized paraphernalia], her control was insufficiently substantial to support a conclusion of her possession of the seized paraphernalia." 320 N.C. at 147, 357 S.E.2d at 638.

In the instant case, there is even less evidence of incriminating circumstances than in *Minor* and *McLaurin*, yet the majority still insists that the State's evidence is substantial enough to maintain a charge of constructive possession. Never before has this Court so conjured up incriminating circumstances in order to justify a conviction under a constructive possession theory. The majority offers the fact that defendant was in *someone else's* bedroom, with *another*

*individual,* where cocaine and plastic jewelry bags were discovered to support this conviction. As previously set out, proximity to narcotics alone has never before been enough to establish an incriminating circumstance, and it should not be enough here.

Because it is well established that proximity to narcotics alone cannot substantiate a finding of constructive possession, the majority uses the fact that defendant's North Carolina State Identification Card and birth certificate were found in the bedroom with the narcotics to show indicia of his control over the room. This is not substantial evidence. There exist many innocent, plausible explanations of why defendant had two forms of identification with him while he was visiting 1924 Dacian Street and why these documents were in the room where defendant was found.[8] Additionally, these identification documents were found on top of an entertainment center near the door to the bedroom, not tucked away in a drawer or filing cabinet. In today's society who does not, as a matter of course, carry an identification card? Furthermore, how is the presence of a certificate of live birth evidence of an incriminating circumstance? To say this qualifies as incriminating, and is thus *substantial* evidence of defendant's possession of cocaine, is setting sail on the "sea of conjecture and surmise" this Court has avoided in the past. *Minor,* 290 N.C. at 75, 224 S.E.2d at 185.

Furthermore, *no other circumstance* at the residence suggests defendant had the " 'intent and capability to maintain control and dominion over' " the controlled substances. *Matias,* 354 N.C. at 552, 556 S.E.2d at 270. (citation omitted). None of defendant's personal items, save his two identification documents, were discovered. No men's clothing, shoes, or toiletry items were found in the residence. No medicines prescribed to defendant were located. No photographs of defendant were retrieved. No utility bills, cable bills, telephone bills, lease agreements, or insurance policies for the residence bore defendant's name, and no mail was found addressed to defendant at 1924 Dacian Street. No substantial evidence of any nature was introduced at trial to tie defendant to 1924 Dacian Street. To the contrary, defendant's North Carolina State Identification Card, which the majority relies upon, had been issued only five months earlier and

---

8. In fact, the record reveals that defendant was scheduled to pick up two of his children from school on the afternoon of the raid. Identification is often required to pick up children from school. Driver's licenses, state-issued identification cards, uniform service identification cards, birth certificates, and/or passports are the forms of identification normally associated with establishing an individual's actual identity.

listed 1309 Oak Street, Winston-Salem, North Carolina, as defendant's address. Moreover, Alicia Johnson, the lessee of the premises, testified that defendant did not live at 1924 Dacian Street. Johnson further testified that the cocaine was found in her personal bedroom and belonged to her.

I realize that the majority scoffs at the glaring absence of substantial evidence in this case and pens the phrase, "absence of evidence is not evidence of absence." This defies legal analysis, much less logic. The nexus of this entire case turns upon whether there was insufficient evidence to maintain a charge of constructive possession. The very legal definition of insufficient evidence is the *absence of evidence*. For the majority to suggest that the absence of evidence is irrelevant exceeds the farcical in legal analysis.

In the end, the only meaningful evidence we have linking defendant to the cocaine at 1924 Dacian Street is that he was found sitting on an unmade bed where a small, BB-sized pellet of crack cocaine was also discovered. Thus, the real question is, "Has the State established that defendant was aware of the 'rock-like substance' found on the bed?" The State presented no evidence of defendant's awareness, other than mere proximity, and as established above, mere proximity alone is insufficient. At best, that defendant was found sitting on a bed in someone else's bedroom where cocaine was found is suspicious.[9] But our law is clear that a defendant cannot be convicted on suspicion alone. Substantial evidence must be presented before a jury can even consider if, beyond a reasonable doubt, defendant possessed cocaine. Without this required substantial evidence the trial court must grant a defendant's motion to dismiss. *In re Vinson*, 298 N.C. at 656-57, 260 S.E.2d at 602; *see* N.C.G.S. § 15A-1227 (2007).

The majority's decision today effectively nullifies the substantial evidence requirement in constructive possession cases, thereby giving the State free reign to prosecute anyone who happens to be at the wrong place at the wrong time. The majority's annihilation of the substantial evidence requirement essentially swings open the door for prosecutors to charge, try, and convict individuals across North Carolina of possession of controlled substances or other contraband

---

9. The majority implies that the fact that two of defendant's children resided at 1924 Dacian Street adds weight to its analysis of incriminating circumstances. The record shows that the residence belonged to the children's mother, and that defendant did not have authority or control over the premises. I fail to see why a finding that defendant's two children resided at 1924 Dacian Street incriminates defendant, and I do not believe it should have any bearing upon the analysis.

on the basis of mere proximity. This has never been the law in this State, and it should not be so now. This unprecedented, unjustified, and unfounded expansion of the law strains credulity and dangerously exposes our citizens to prosecutorial overreaching at the expense of personal liberty. Therefore, I respectfully dissent.

Justice TIMMONS-GOODSON dissenting.

As I conclude the State presented insufficient evidence that defendant constructively possessed the cocaine discovered by law enforcement officers, I respectfully dissent.

The majority correctly notes that "unless a defendant has exclusive possession of the place where contraband is found, the State must show other incriminating circumstances sufficient for the jury to find a defendant had constructive possession." Here, it is uncontroverted that defendant did not have exclusive possession of the apartment or even the bedroom in which the cocaine was discovered. Thus, the State was required to provide evidence of other incriminating circumstances to show that defendant constructively possessed the cocaine. This the State failed to do. The majority identifies only two factors in support of its conclusion that the State produced substantial evidence of defendant's possession of the cocaine: (1) defendant's proximity to the cocaine; and (2) the presence of defendant's birth certificate and identification card on top of a television stand. I do not agree with the majority that defendant's mere proximity to the cocaine, which was not in plain view, or the presence of his birth certificate and identification card, which *were* in plain view and, in fact, showed defendant lived elsewhere, constituted sufficiently incriminating circumstances to permit more than a mere suspicion of defendant's guilt. *See State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988) (stating that "a motion to dismiss should be allowed where the facts and circumstances warranted by the evidence do no more than raise a suspicion of guilt or conjecture since there would still remain a reasonable doubt as to defendant's guilt"). I therefore respectfully dissent.

Justice HUDSON joins in this dissenting opinion.