STATE OF NORTH CAROLINA v. BENZION BIBER

No. COA09-331

(Filed 7 September 2010)

**Search and Seizure— motion to suppress—white powder found in bathroom light fixture in motel room**

The trial court erred in a felony possession of cocaine case by denying defendant's motion to suppress the white powder recovered from a bathroom light fixture in a motel room. The trial court failed to make any findings of fact or conclusions of law concerning defendant's intent and capability to maintain control and dominion over the white powder.

Judge STEELMAN dissenting.

Appeal by Defendant from judgment entered 3 October 2008 by Judge Zoro J. Guice, Jr. in Superior Court, Buncombe County. Heard in the Court of Appeals 16 September 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Robert T. Hargett, for the State.*

*Betsy J. Wolfenden for Defendant on brief.*

*Appellate Defender Staples Hughes substituted, after briefing, as counsel of record for Defendant.*

McGEE, Judge.

Benzion Biber (Defendant) was indicted for possession of four grams of crack cocaine on 3 March 2008 based on evidence obtained pursuant to Defendant's arrest on 9 September 2007. Defendant moved to suppress the cocaine on 26 September 2008, arguing it was obtained in violation of Defendant's Fourth Amendment rights. The trial court heard Defendant's motion to suppress on 3 October 2008[1]

---

1. The transcript of the 3 October 2008 hearing incorrectly states that the hearing was held on 29 August 2006.

and entered an order denying defendant's motion on 14 November 2008. Defendant then entered a plea of guilty to possession of a schedule II substance, preserving his right to appeal the denial of his motion to suppress. Defendant was sentenced to a suspended sentence of six to eight months, and was placed on twenty-four months supervised probation. Defendant appeals.

The State presented the following evidence at the 3 October 2008 hearing on Defendant's motion to suppress. Cheryl Harvin (Harvin), General Manager of a Motel 6 in Buncombe County, testified she received two complaints on 9 September 2007 from one of her guests, Sharon Hensley (Hensley), who had rented a room ("Room 312" or "the room") with an unidentified friend the previous evening. Both times Hensley complained that there were people in her room using drugs, and that she did not want them there. She did not identify who was in her room, or who was using drugs. Hensley first spoke to Harvin in the office of the Motel 6. Subsequently, Hensley called Harvin from an unknown location, but not from Room 312. Harvin called the Asheville Police Department, and two officers, Alan Presnell (Officer Presnell) and Michelle Spinda (Officer Spinda), were dispatched to the Motel 6. Harvin accompanied the officers to Room 312, and Harvin knocked on the door.

Officer Presnell testified that he and Officer Spinda remained out of view as the door opened, and he heard Harvin speak with a male who was inside the room. Harvin told the male "you are not supposed to be here," and then Officer Presnell "stepped around the corner of the doorway . . . and [he] encountered [Defendant] standing at the door." Officer Presnell told Defendant why they were there, and Defendant stepped back to let the officers into the room, but the officers remained in the doorway. Officer Presnell testified that when he "asked whose room is this, [Defendant] said, 'It's my room.' That led me to believe that he was the official renter of the room when, in fact, now I know he wasn't."

Officer Presnell then saw that two females, later identified as Tammy Meadows (Meadows) and Candice Moose (Moose), were also in the room. Officer Presnell observed that there were two beds in Room 312, one closer to the entrance door and one closer to the bathroom towards the rear of the room. When Officer Presnell entered the room, Meadows, who had been sitting on the bed closest to the bathroom, "got up from the bed and I would say ran to the bathroom [and] went in and closed the door." Knowing that there had been a report of drug activity in Room 312, Officer Presnell testified that the action

**STATE v. BIBER**

[206 N.C. App. 661 (2010)]

of Meadows "was consistent with what we know to be the activities of someone who is either trying to destroy or hide evidence or trying [to] elude the police[.]" Officer Spinda saw Meadows grab what Officer Spinda identified as a crack pipe before Meadows ran into the bathroom.

The officers then entered Room 312. They observed drug paraphernalia consistent with crack cocaine use on the bed closest to the bathroom, which was the bed on which Meadows had just been sitting. Officer Presnell asked Defendant to step back while Officer Spinda went to the bathroom door, knocked on the door, and asked Meadows to come out. Officer Spinda heard the toilet flush. Officer Presnell described his job at that point as maintaining the situation in the room by keeping control of Defendant and Moose while Officer Spinda dealt with the situation in the bathroom. Officer Presnell was making sure neither Defendant nor Moose made any threatening movements or attempted to hide or destroy any potential evidence. Defendant was walking back and forth between one of the beds and the dresser in the room. Officer Presnell asked Defendant several times to remain still. Officer Presnell described Defendant as attempting to reach under pillows and open the dresser drawers. During this time, Officer Spinda collected the drug paraphernalia from the bed, and continued her attempts to gain access to the bathroom. After about a minute, Meadows opened the bathroom door and came out. Officer Spinda described Meadows as "nervous and jittery."

Officer Spinda then entered the bathroom to conduct a search because she was concerned that Meadows may have been attempting to hide or destroy evidence. Officer Spinda noticed razor blades in the toilet bowl. At this point, Defendant, Meadows, and Moose were all seated on the beds. Officer Presnell questioned Meadows, asking her why she had run into the bathroom, and if there had been any illegal activity taking place. Officer Spinda returned from the bathroom holding a small cardboard box. Officer Presnell looked inside the box and saw more drug paraphernalia. Officer Spinda asked if the box belonged to the two women or Defendant. All three denied owning the box. Meadows, however, admitted she owned some of the paraphernalia in the box. Officer Spinda located more paraphernalia after searching the women's purses. Officer Spinda returned to the bathroom and located a plastic bag containing white powder inside a light fixture. No field test was conducted on the substance by the officers at that time. Defendant, Meadows, and Moose all denied knowing anything about the white substance.

During the search, Officer Spinda pulled back the covers on the bed upon which Defendant was seated, and Defendant jumped up in a manner that Officer Presnell found potentially threatening to Officer Spinda. Officer Presnell then drew his weapon and placed Defendant in handcuffs. There was a duffel bag containing men's clothing near the entrance to the room. Defendant stated the duffel. bag belonged to him.

The officers arrested Defendant, Meadows, and Moose. Meadows and Moose were arrested for possession of paraphernalia and possession of a controlled substance. It is unclear if either Meadows or Moose was arrested for trespassing. Officer Presnell testified that Defendant was not arrested for possession of paraphernalia because Defendant "didn't have any paraphernalia about his person even though he was in the room, the paraphernalia was more consistent with the females. [Meadows] . . . was in the bathroom seconds before the paraphernalia was found in the bathroom."

Defendant was arrested for "constructive possession of what we believed to be powder cocaine." Officer Presnell transported Defendant to the detention center. At the time, Officer Presnell did not know whether Defendant's presence in Room 312 had been lawful or not. When they reached the detention center, Officer Presnell informed Defendant that if he had any contraband on him, he should let Officer Presnell know before they entered the detention facility. Defendant then asked Officer Presnell to hold out his hands and Defendant dropped two rocks, later determined to be four grams of crack cocaine, into Officer Presnell's hands. Lab tests subsequently conducted on the white powder obtained from the light fixture in the bathroom of Room 312 determined that it was not a controlled substance.

Defendant contends that the trial court erred in denying Defendant's motion to suppress. We agree.

"In reviewing a trial judge's ruling on a suppression motion, we determine only whether the trial court's findings of fact are supported by competent evidence, and whether these findings of fact support the [trial] court's conclusions of law." *State v. Pulliam*, 139 N.C. App. 437, 439-40, 533 S.E.2d 280, 282 (2000) (citation omitted).

In this case, after the denial of Defendant's motion to suppress, Defendant pled guilty to the charge of felony possession of cocaine. Because prior to arrest, no suspected controlled substance was actually found on Defendant's person, or in any of his personal belongings, the

**STATE v. BIBER**

[206 N.C. App. 661 (2010)]

State based its possession charge against Defendant upon the theory that Defendant constructively possessed the white powder recovered from the bathroom light fixture in Room 312.

"A defendant constructively possesses contraband when he or she has 'the intent and capability to maintain control and dominion over' it. The defendant may have the power to control either alone or jointly with others." *State v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009) (citation omitted). Absent exclusive control over the area in which the suspected controlled substance was found, "constructive possession of the [suspected] contraband materials may not be inferred without other incriminating circumstances." *State v. Brown*, 310 N.C. 563, 569, 313 S.E.2d 585, 589 (1984); *see also State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 271 (2001); *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989). A " 'conviction must be based upon [a defendant's] *knowing* possession of the [suspected controlled substance].' A State cannot obtain a conviction based on drugs being 'surreptitiously introduced . . . into a defendant's residence.' " *Rashidi*, 172 N.C. App. at 635-36, 617 S.E.2d at 74 (citations omitted). For example, "[t]he State must show more than [that a] package was addressed to defendant and contained [a controlled substance], since such proof does not necessarily establish defendant's knowledge of the contents of the package and his intent to exercise control over the [contents]. *State v. Weems*, 31 N.C. App. 569, 571, 230 S.E.2d 193, 194 (1976) ('Necessarily, power and intent to control the contraband material can exist only when one is aware of its presence.')." *Rashidi*, 172 N.C. App. at 636, 617 S.E.2d at 74.

> Receipt of a package, without more, is analogous to a person being in proximity to drugs on premises over which he does not have exclusive control. When a person does not have exclusive possession of the place where narcotics are found, "the State must show other incriminating circumstances before constructive possession may be inferred." *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989) (citation omitted); *see State v. Balsom*, 17 N.C. App. 655, 659, 195 S.E.2d 125, 128 (1973) ("Mere proximity to persons or locations with drugs about them is usually insufficient, in the absence of other incriminating circumstances, to convict for possession.").

*Id.*

In the present case, the trial court failed to make any findings of fact or conclusions of law concerning Defendant's "intent and capa-

bility to maintain control and dominion over" the white powder found in the bathroom light fixture. As intent and capability to maintain control and dominion are elements of constructive possession, the trial court's findings of fact and conclusions of law fail to support its order denying Defendant's motion to suppress. *Miller*, 363 N.C. at 99, 678 S.E.2d at 594. We reverse the trial court's order for this reason. *Id.* at 98-99, 678 S.E.2d at 594. However, we will consider whether competent evidence presented at the suppression hearing could support Defendant's charge for constructive possession before we decide whether it is necessary to remand to the trial court for additional findings and conclusions.

> Our cases addressing constructive possession have tended to turn on the specific facts presented. *See, e.g., Butler*, 356 N.C. at 143-44, 147-48, 567 S.E.2d at 138-39, 141 (finding constructive possession when the defendant acted suspiciously upon alighting from a bus; hurried to a taxicab and yelled "let's go" three times; fidgeted and ducked down in the taxicab once in the back seat, then exited the taxicab at the instruction of police officers and walked back to the bus terminal without being told to do so, drawing officers away from the taxicab; and drugs were recovered from under the driver's seat of the taxicab approximately ten minutes later when the cab returned from giving another customer a ride); *Matias*, 354 N.C. at 550-52, 556 S.E.2d at 270-71 (finding constructive possession when officers, after smelling marijuana emanating from a passing automobile occupied by the defendant and three others, recovered marijuana and cocaine stuffed between the seat pad and back pad where the defendant had been seated, and an officer testified the defendant was the only occupant who could have placed the package there); *State v. Brown*, 310 N.C. 563, 569-70, 313 S.E.2d 585, 588-89 (1984) (finding sufficient other incriminating circumstances when cocaine and other drug packaging paraphernalia were found on a table beside which the defendant was standing when the officers entered the apartment, the defendant had been observed at the apartment multiple times, possessed a key to the apartment, and had over $1,700 in cash in his pockets); *State v. Baxter*, 285 N.C. 735, 736-38, 208 S.E.2d 696, 697-98 (1974) (finding constructive possession when the defendant was absent from the apartment when police arrived but a search of the bedroom that the defendant and his wife occupied yielded men's clothing and marijuana in a dresser drawer, with additional marijuana found in the pocket of

a man's coat in the bedroom closet); *State v. Allen*, 279 N.C. 406, 408, 412, 183 S.E.2d 680, 682, 684-85 (1971) (finding constructive possession when, even though the defendant was absent from the apartment at the time of a search, heroin was found in the bedroom and kitchen; the defendant's identification and other personal papers were in the bedroom, public utilities for the premises were listed in the defendant's name; and a witness testified that the defendant had provided heroin to him for resale). These and other cases demonstrate that two factors frequently considered are the defendant's proximity to the contraband and indicia of the defendant's control over the place where the contraband is found.

*Id.* at 99-100, 678 S.E.2d at 594-95 (internal citations omitted).

[I]n *State v. Neal*, 109 N.C. App. 684, 687-88, 428 S.E.2d 287, 290 (1993), this Court found sufficient incriminating circumstances to survive a motion to dismiss when defendant had been in a bathroom where another person was flushing drugs down the toilet, but fled from the bathroom as the police arrived. *See also State v. Frazier*, 142 N.C. App. 361, 367, 542 S.E.2d 682, 687 (2001) (finding sufficient incriminating circumstances to survive a motion to dismiss when defendant was observed lunging into a bathroom and placing his hands in the ceiling where drugs were later located)[.]

*State v. Turner*, 168 N.C. App. 152, 156-57, 607 S.E.2d 19, 23 (2005).

The trial court in the present case ruled as a matter of law that Defendant lacked standing to challenge the search of the room, a finding that necessarily ruled Defendant was not an overnight guest in the room.[2] *Stoner v. California*, 376 U.S. 483, 489, 11 L. Ed. 2d 856, 860-61 (1964); *United States v. Kitchens*, 114 F.3d 29, 32 (4th Cir. W. Va. 1997). The trial court concluded:

[D]efendant was not a registered guest at the motel and did not rent the room at the motel, . . . the only evidence to connect [D]efendant to the motel room is his statement that it was his room and that the bag containing the male clothes was his. There is no way to know or determine whether [D]efendant had been in the room fifteen minutes or twenty-four hours. That the only claim which [Defendant] had to standing for the motel room is his

2. The trial court's analysis properly should have been directed to whether Defendant had a legitimate expectation of privacy in Room 312 pursuant to the Fourth Amendment, not whether Defendant had standing to contest the search. *Minn. v. Carter*, 525 U.S. 83, 87-88, 142 L. Ed. 2d 373, 379 (1998).

statement that the room was his and his claiming of the male clothing. That question of standing for [Defendant] to complain, with respect to the search of the motel room, is not supported by all of the evidence presented during the course of this hearing. And the [c]ourt will conclude . . . that the evidence failed to prove or indicate that [Defendant] had any standing to complain of the search conducted by [the officers].

Because the trial court concluded that "the evidence failed to prove or indicate" Defendant had "standing" to challenge the search of the room, this conclusion also necessarily means that the trial court concluded Defendant was not the "friend" Hensley indicated she would be sharing the room with. Had Defendant been the "friend" with whom Hensley indicated she would be sharing the room when she checked in, then Defendant would have had "standing" to challenge the search. *Stoner*, 376 U.S. at 489, 11 L. Ed. 2d at 860-61; *Kitchens*, 114 F.3d at 32. If Defendant had a legitimate expectation of privacy in the room, he would have had "standing" to contest the search. *Rakas v. Illinois*, 439 U.S. 128, 142-43, 58 L. Ed. 2d 387, 400-01 (1978). Further, all the evidence clearly shows that Hensley did not want Defendant, Meadows, and Moose in her room, as she twice contacted management in order to have them removed. They were clearly not invited guests at the time the officers conducted their search. Thus, not only was Defendant's control over the room not exclusive, it was minimal.

In *State v. Moore*, 162 N.C. App. 268, 592 S.E.2d 562 (2004) our Court found the relevant facts were as follows:

[T]he officers talked briefly with [the defendant] at the residence's door, Defendant attempted *to shut the door.* The deputies grabbed [the] defendant] and arrested him for resisting arrest. Thereafter, the deputies searched the residence. In plain view, the deputies found a brown paper envelope containing crack cocaine sitting on top of some insulation in an area where the paneling had been removed from the wall.

The deputies also found two other individuals in the residence. Upon searching [the defendant's] person, the deputies located $18.00 in his front pocket and $309 in his billfold. Deputy Springs testified he had seen [the defendant] at [the residence] on several previous occasions.

*Id.* at 270, 592 S.E.2d at 564-65. The *Moore* Court held that it was error for the trial court to have instructed the jury on constructive possession of the cocaine found in the residence, stating:

> The State also indicates . . . $327.00 of U.S. currency on [the defendant's] person, and the African-American female's testimony that she was there to see her cousin, D.D., whom Deputy Springs indicated was [the defendant's] street name, constituted incriminating circumstances from which one could infer constructive possession. . . . Upon answering the door, the officers asked to talk with [the defendant] about narcotics activity. [the defendant] indicated he did not want to talk to police and tried to close the door. The officers then prevented [the defendant] from closing the door, grabbed him and threw him on the ground and arrested him. When [the defendant] attempted to close the door, he was not under arrest, was not the subject of an arrest warrant and was under no obligation to talk to police. Indeed, the trial court dismissed Defendant's resist, obstruct and delay charge. Moreover, there is no evidence Defendant struggled with the officers before the officers handcuffed him as the State contends in its brief. Finally, $327.00 in U.S. currency, without more, is not a significant amount of money from which one can infer constructive possession of drugs. As there was insufficient evidence of incriminating circumstances, we conclude the trial court erred in instructing the jury on constructive possession.

*Id.* at 276, 592 S.E.2d at 566-67.

In *Weems*, 31 N.C. App. at 571, 230 S.E.2d at 194-95, our Court found the following facts were supported by substantial evidence:

> [The police] saw three men get into the automobile and drive away. They followed and shortly thereafter stopped the car. Defendant was found to be a passenger sitting in the right front seat. The driver was the registered owner of the car. The third man was riding in the back seat. Packets of heroin were found hidden in three different locations in the car, two of which were in the front seat area and one in the back seat area. Defendant was in close proximity to the heroin hidden in the front seat area. There was no evidence defendant owned or controlled the car. There was no evidence he had been in the car at any time other than during the short period which elapsed between the time the officers saw the three men get in the car and the time they

stopped and searched it. There was no evidence of any circumstances indicating that defendant knew of the presence of the drugs hidden in the car.

*Id.* at 571, 230 S.E.2d at 194-95. The *Weems* Court held:

Viewing the evidence in the light most favorable to the State, and giving the State the benefit of every legitimate inference which may be reasonably drawn from the evidence, we find no evidence of any circumstance connecting the defendant to the drugs in any manner whatsoever other than the showing of his mere presence for a brief period in the car as a passenger. In our opinion, this was not enough. Defendant's motion for nonsuit should have been allowed.

*Id.* at 571-72, 230 S.E.2d at 195. In this case, because the trial court concluded that Defendant was not a person with any legitimate authority to control the room, and further concluded that there was no way of determining how long Defendant had been in the room prior to the arrival of the officers, we hold there was not competent evidence that Defendant intended to, and had the capability to, maintain control and dominion over the place where the suspected controlled substance was found, or over the suspected controlled substance itself. *Id.; Moore,* 162 N.C. App. at 276, 592 S.E.2d 566-67.

Furthermore, as we have determined there are no findings of fact or conclusions of law covering the elements of constructive possession, there are naturally no findings or conclusions concerning Defendant's "proximity to the contraband." The trial court simply concluded as a matter of law that none of Defendant's constitutional rights had been violated by his arrest for constructive possession. "It is recognized that 'mere proximity to persons or locations with drugs about them is usually insufficient, in the absence of other incriminating circumstances, to convict for possession.' " *State v. Balsom,* 17 N.C. App. 655, 659, 195 S.E.2d 125, 128 (1973).

In *Miller,* a divided panel of our Supreme Court held that the evidence, when viewed in the light most favorable to the State, was sufficient for a charge of constructive possession to be submitted to the jury. The evidence upon which our Supreme Court based its holding was as follows:

police found defendant in a bedroom of the home where two of his children lived with their mother. When first seen, defendant

was sitting on the same end of the bed where cocaine was recovered. Once defendant slid to the floor, he was within reach of the package of cocaine recovered from the floor behind the bedroom door. Defendant's birth certificate and state-issued identification card were found on top of a television stand in that bedroom. The only other individual in the room was not near any of the cocaine. Even though defendant did not have exclusive possession of the premises, these incriminating circumstances permit a reasonable inference that defendant had the intent and capability to exercise control and dominion over cocaine in that room.

*Miller*, 363 N.C. at 100, 678 S.E.2d at 595.

We first note that even absent the trial court's conclusion of law that Defendant had no "standing" to challenge the officers' search of Room 312, the facts in this case fall far short of the facts present in *Miller*. Further, the State's evidence in this case clearly shows that the officers never saw Defendant enter the bathroom, and no evidence was presented that Defendant had ever entered the bathroom. The evidence shows that Meadows ran into the bathroom, and for more than one minute refused to come out in response to Officer Spinda's demands. While in the bathroom, Meadows conducted activity consistent with the destruction or hiding of contraband.

Our review of other appellate opinions from our Courts in which a defendant did not have clear dominion and control over the premises shows no decision upholding a finding of intent to exercise control and dominion over a suspected controlled substance when there was no evidence that the defendant was ever in an area where he had the capability to secrete the suspected contraband in the location in which it was found. In *Miller*, the defendant slid off of a bed in which contraband was located, and more contraband was found in close proximity to where the defendant was found lying on the floor. In the cases cited in *Miller* that did not involve locations over which the defendant had clear dominion and control, the contraband was located either in immediate proximity to the defendant, or in places where competent evidence showed the defendant had recently been. *Id.* at 99-100, 678 S.E.2d at 594-95. In those cases where the contraband was not located in close proximity to the defendant, the defendant's dominion and control over the location was evident, and there were other circumstances to support constructive possession. *See, e.g.*, *Baxter*, 285 N.C. at 736-38, 208 S.E.2d at 697-98 "(finding constructive possession when the defendant was absent from the apart-

ment when police arrived but a search of the bedroom that the defendant and his wife occupied yielded men's clothing and marijuana in a dresser drawer, with additional marijuana found in the pocket of a man's coat in the bedroom closet)[.]" *Miller,* 363 N.C. at 100, 678 S.E.2d at 595; *see also* cases cited above. There was "no evidence that [Defendant was] under the influence of or [a user of] of narcotics." *Balsom,* 17 N.C. App. at 659, 195 S.E.2d at 128. The trial court's relevant findings of fact concerning Defendant's actions in the room were limited to the following: that Defendant "stated to [Officer] Presnell that the motel room was his room[;]" that Defendant "continued or insisted on continuing to walk around the room[,]" following which Officer "Presnell told [Defendant] to have a seat on the bed[;]" "[t]hat after [Defendant] took a seat on the bed pursuant to the officers' instructions, that [Defendant] stood up real fast on one occasion and the officers drew their guns[;]" and that "a bag was located in the motel room which [Defendant] said was his bag. That inside the bag was male clothes which [Defendant] also said were his clothes." The relevance of the trial court's findings that Defendant stated the room was his, and that Defendant stated the duffel bag containing male clothes was his, is seriously undermined by the trial court's conclusion that Defendant lacked "standing" to contest the search, and the conclusion that there was no way to know whether Defendant had been in the room "fifteen minutes or twenty-four hours."

We decline to expand the holding in *Miller* to allow someone to be convicted of constructive possession when competent evidence supports neither dominion and control over the location in which the contraband was located, nor that the suspect was ever in close proximity to the recovered contraband (or suspected contraband). *See State v. Harvey,* 281 N.C. 1, 12-13, 187 S.E.2d 706, 714 (1972); *State v. McNeil,* 165 N.C. App. 777, 781, 600 S.E.2d 31, 34 (2004). Were we to expand the holding in *Miller* to cover these facts, we would in effect be affirming convictions for constructive possession based upon a defendant's "mere proximity to persons or locations with drugs about them[.]" *Balsom,* 17 N.C. App. at 659, 195 S.E.2d at 128.

We hold that there was not competent evidence presented in this case to support the trial court's findings of fact nor its conclusion that Defendant had the requisite intent and capability to maintain control and dominion over the suspected controlled substance. *Id.* at 99, 678 S.E.2d at 594. There was no competent evidence of any circumstances indicating that Defendant knew of the presence of the

suspected controlled substance located in the bathroom light fixture. *See Hamilton*, 145 N.C. App. at 158, 549 S.E.2d at 237; *(see also State v. Savaria*, 2005 N.C. App. LEXIS 1237 (N.C. Ct. App. July 5, 2005)). "[W]e find no evidence of any circumstance connecting the defendant to the drugs in any manner whatsoever other than the showing of his mere presence for a brief period in" the room. *Weems*, 31 N.C. App. at 571, 230 S.E.2d at 195. We hold that the trial court erred in denying Defendant's motion to suppress.

New trial.

Judge JACKSON concurs.

Judge STEELMAN dissents with a separate opinion.

STEELMAN, Judge, dissenting. ·

I must respectfully dissent from the majority opinion.

The defendant was convicted of the possession of two rocks of crack cocaine that he surrendered to police, not the counterfeit controlled substance that was found in the bathroom light fixture of the motel room.

On appeal, defendant brings forward only two assignments of error as follows:

6. The trial court's conclusion of law in its denial of defendant's motion to suppress, that . . . on the ground that it was erroneous in law, and, therefore, the trial court's conclusion violated the defendant's rights under North Carolina law, Article I, §§ 19, 20, 23 and 35 of the North Carolina Constitution, and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

8. The trial court erred by denying defendant's motion to suppress on the ground that the decision was not supported by sufficient conclusions of law, was erroneous in law, and, therefore, the trial court's decision violated the defendant's rights under North Carolina law, Article I, §§ 19, 20, 23 and 35 of the North Carolina Constitution, and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Neither of these assignments of error attack any of the trial court's findings of fact, and they are therefore binding on appeal. *State v.*

TOTAL RENAL CARE OF N.C., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[206 N.C. App. 674 (2010)]

*Carrouthers*, —— N.C. App. ——, ——, 683 S.E.2d 781, 784 (2009). Since assignment of error 6 fails to specify which conclusion of law it seeks to attack, it is deficient. *State v. Roache*, 358 N.C. 243, 288, 595 S.E.2d 381, 411 (2004); N.C.R. App. P. 10(c)(1) (2009). There is no assignment of error that the conclusions of law are not supported by the findings of fact. The remaining assignments of error are not argued and are deemed abandoned. N.C.R. App. P. 28(b)(6) (2009). Thus the analysis is limited to assignment of error 8, which is a general attack on the sufficiency of the conclusions of law to support the decision.

Defendant's motion to suppress raised two issues; (1) that the police officers violated his constitutional rights by searching the motel room without consent and without a search warrant; and (2) that there was no probable cause to arrest defendant. The trial court's order addresses in detail the first issue, but fails to make any findings of fact or conclusions of law as to whether there was probable cause to arrest the defendant.

It is not the role of the appellate courts to rule upon issues not previously decided by the trial court. *State v. Lloyd*, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607 (2001). I would remand this matter to the trial court for entry of an order containing findings of fact and conclusions of law concerning whether there was probable cause to arrest the defendant.

I would affirm the trial court's order denying the motion to suppress as to the search of the motel room.